| 21 | 597 |
| 78 | 668 |
| 79 | 242 |

L. H. LITTLE AND WIFE v. G. H. BIRDWELL AND OTHERS.

The District and Probate Courts may, in certain cases, have concurrent jurisdiction.

Where questions of title are involved, or the decision of the case brings in question the construction of a will, it is proper to resort to the District Court as the more appropriate tribunal to adjudicate such questions.

An inventory, returned by the administrator of an estate, who was the widow of the testator, is not conclusive against her upon a question of title to property placed thereon.

An inventory thus returned is to be deemed but as *prima facie* evidence of title in the estate, which may be rebutted by proof that the title was not in the testator or intestate, but in another.

It is not necessary, in order to admit proof of title in herself, that such administratrix in returning the inventory, acted in ignorance of her rights.

Such a return is not an estoppel in deed; and to constitute it an estoppel *in pais*, the admission it contains, must have been acted on by others, who would be prejudiced were the party who made the admission, permitted to retract it.

Where a wife paid money of her own to release a negro, belonging to the husband, from process, and the husband declared that if the money was paid, the negro should be hers, the import of the declaration was rather to create an obligation or duty on the part of husband to vest title in the wife, than to evidence a present transfer of the title.

Where property is limited to a widow until marriage, and upon marriage then over, the limitation is good, not being a condition in restraint of marriage.

The affidavit of jurors ought not in general be received to impeach their verdict, and, if received at all, for that purpose it ought only to be under special circumstances. The course of decision in this Court has been decidedly to discountenance the practice.

Appeal from Rusk. Tried below before Hon. C. A. Frazer.

Suit by appellees, who are the children and heirs-at-law of Richard J. Ball, to recover from the appellants, who are his administrators, certain property of which they were in possession, and to which they set up title in themselves, and for hire, &c. The appellants filed a general demurrer and special exceptions going to the jurisdiction of the Court, which were overruled. They answered, alleging that the slaves sued for were the separate property of Elizabeth A. Little, one of the appellants.

On the trial, the appellees introduced the petition of Elizabeth A. Ball to the County Court of Rusk county, for the probate of the will of Richard J. Ball, deceased. The order of said Court admitting said will to probate and record; the will itself, the order of the County Court, appointing appraisers, and the inventory returned by her to the County Court. The will, which was a nuncupative one, was as follows: "First. That my wife, Elizabeth A. Ball, keep and have my property during her lifetime or widowhood, to raise and educate the children, and then to be divided equally among my children by her." The property in controversy

was placed upon the inventory of the estate of said Richard J. Ball, deceased. By a subsequent order, Lewis A. Little and Elizabeth A. Little were appointed administrators of said estate, who filed another inventory, omitting the negroes claimed by said Elizabeth as her separate property. It was proved that the appellant, Elizabeth A., was the widow of Richard A. Ball, deceased, and that she intermarried with her co-defendant, Little, about two years before; that the appellees, Sarah H. Birdwell, Martha A. Bagley, Mary Ann Cox, Eliza Murchison, William H. Ball and Jane Ball, were the children of Richard J. Ball and the appellant, Elizabeth A. Little. It was proved that the negroes in controversy were the property of Richard J. Ball deceased, in Alabama, Mississippi and Louisiana.

The appellants called a witness who proved that R. J. Ball started with his family from the State of Alabama for the State of Mississippi, in 1832, in company with witness; that he had the slaves Hannah and Andy in possession; that he (Ball) was stopped by some officer, upon some kind of process; that Ball's wife gave the officer an order on her guardian for the amount of the claim for which Ball was stopped; that witness and one Finley signed a bond to the officer, conditioned that if the order was not paid, the negroes Hannah and Andy should be delivered up to him; that Ball said to his wife at the time that if the order was paid, the said slaves should be hers. Witness testified that Ball told him that the order was paid by his wife's guardian; that while Ball lived in Mississippi, witness made a trade with him for the negroes Hannah and Andy, but upon applying to the defendant, Elizabeth A., to join in the sale, she refused, alleging that the slaves were hers. Witness once suggested to Ball to make a deed of the negroes to his wife, and have it recorded, which he declined to do. The appellants then offered to read in evidence a report made by them to the County Court of Rusk county, made at March Term, 1856, a portion of which was admitted, but

the greater portion was rejected.  They proved certain pay-
ments, made by them on the account of the estate, and board-
ing and clothing furnished one of the children.

The Court submitted the following issues to the jury, upon
which they were directed to find a special verdict:

1st. Whether the plaintiffs are the children, &c., of the de-
ceased as alleged in the petition.

2nd. Whether the instrument copied in the petition, and
submitted as such, is the will of R. J. Ball, deceased.

3rd. Whether the negroes, or any of them in controversy in
·this suit, are the separate property of the deceased or of his
surviving wife ; and if a part only should be the property of
the one or the other, you will state which.

4th. Whether the said surviving wife of deceased intermar-
ried with any person, and if so, with whom, and when.

5th. If you should find that all, or a part of said negroes,
were the property of the deceased, you will then find the value
of each which belonged to him, and the value of the hire of
the same, from the date of her adverse claim.  So long as
any of the plaintiffs were supported by said surviving wife,
you will find the amount she expended for the support, cloth-
ing and education of each, after allowing as an off-set against
the same, for such services as may have been rendered by each
of them to her.

6th. Whether said widow, subsequent to her marriage, paid
any debts against the estate of the deceased, which accrued
since the marriage, and if any, the amount of the same.

The Court charged the jury, that in deciding whether the
negroes, or any of them, belonged to the deceased or to the
surviving wife, they were to be governed by the following
principles : " If the negroes were acquired by the deceased in
the State of Alabama, they were his separate property, and
to divest him of the title to them, or any part of them, and
vest it in the wife, he must have given or conveyed them to

her, with or without consideration, to be her separate property, free and independent of his right to dispose of them without her consent. In considering this question, you will regard the inventory of said negroes, returned by said surviving wife, representing them as belonging to the estate of her deceased husband, (if any such inventory has been returned,) as conclusive against her on the question of title, unless you should believe from the evidence that she returned said inventory without a knowledge of the facts constituting her title, or without a knowledge of the fact that she had title."

The following charges, asked by the appellants, were refused by the Court, to-wit: 1st. "If the will gave the property to the wife during her life, or while she remained a widow, that the wife is not divested of the estate by marriage, but that the use of the negroes is vested in her, and the prohibition of marriage is contrary to law and not binding on her."

2nd. "That the inhibition of marriage in the will of R. J. Ball, deceased, is a nullity, and that her marriage did not divest the life estate in the separate property of her first husband," and to the ruling of the Court refusing them, appellants excepted.

To the first and second issue submitted, the jury found affirmatively; to the third, that the negroes in controversy were the separate property of R. J. Ball, deceased; to the fourth, that Elizabeth A., the appellant, intermarried with Lewis H. Little about two years before; and to the fifth and sixth, the value of the slaves, hire, &c., and the sum paid and furnished for the children, and for the estate, upon which a decree was rendered in favor of appellees, according to the tenor of the verdict.

Appellants moved for a new trial upon several grounds, among them because a paper which had been read in evidence,

and commented on by counsel, was, by mistake, withheld from the jury on their retirement; and if said paper had been before the jury, their finding would have been in favor of the appellants; in support of which ground five of the jurors swore that had said paper been before them, the finding would have been different. Motion overruled.

*S. P. Hollingsworth,* for appellant. I. We maintain that the District Court had no jurisdiction in this case. Because by the Statute, (Hart. Dig. Art. 1150,) a remedy is provided that any person interested, may, if they see proper, by petition in the Probate Court, compel an administrator to render another inventory, and that by this Statute, the jurisdiction is limited to the County Court, this not being a suit for the construction of a will.

II. We maintain that a deed or bill of sale by the husband to the wife is good as between the heirs-at-law of R. J. Ball, deceased, and his widow, one of the appellants, Mrs. Little. (Hartwell v. Jackson, 7 Tex. R. 581; Wilson, Adm'r, v. Trawick, 10 Id. 428; Dingey *et al* v. Smith *et al.,* 4 Id. 411; Avery v. Avery, 12 Id. 54.) That a bill of sale is not necessary to convey title to a slave. (Edrington v. Mayfield, 5 Tex. R. 353; Davis v. Loftin, 6 Id. 489; Dooley v. McGiving, 8 Id. 306.)

III. As to the affidavit of the jurors see the State v. Boobie, (4 Yerger, 139;) Henderson v. State, (9 Id. 408.)

IV. Where a party acts in ignorance of his or her rights, or in mistake of the law, that they are not precluded or estopped by said act. (Hart. Dig. Art. 1151; Hall v. Phelps, Dallam, 435; Warder v. Tucker, 7 Mass. R. 452.)

V. We affirm that according to the doctrines of the Civil Law, and also of some of the States, that this being a case where the devise was not of real estate, or of an interest growing out of real estate, that the will was in restraint of

marriage and therefore void. (Catharine Lowe's case, 4 Burrow, 2225–2230, and the case there cited by the Court, of Baker v. White, Ib. 2233.) And in the case in 6 Mass. R. of Parsons v. Winslow, the doctrine is broadly laid down in just such a case as this, that it was in restraint of marriage and therefore void. (See also 1 Rop. on Legacies, 797 and note; Williams on Ex. 1096, note n ; 3 Vesey, 96, and note.)

*Wm. Stedman,* for appellee. I. The Court did not err in refusing the charges asked by the appellants. It is true that conditions in restraint of marriage are odious and therefore held to the utmost rigor and strictness, though in cases of a bequest over they have been generally sustained, but it has always been held that a limitation of a bequest or legacy to a person until marriage, and when such marriage happens then over is valid. (Mosley v. Reynoldson, 2 Han. 580 ; Richards v. Baker, 3 Atk. 321 ; Jordan v. Holkham, 1 Ambler, 209 ; 1 Roper on Legacies, 797, note 4.) The same doctrine has been recognised and enforced in New York. (Chapin v. Maivin, 12 Wend. 538 ; Beekman v. Hudson, 20 Wend. 53 ; in Kentucky, Vance v. Campbell, 1 Dana, 230 ; in Pennsylvania, Craig v. Watt, 8 Watts. 498 ; Middleton v. Rice, 6 Penn. L. J. 231 ; in North Carolina, Picos v. Armstead, 2 Iredel. Eq. 230 ; in Alabama, Broadnox v. Sims, 8 Ala. R. 497.)

And it is to be observed that in the reports of all these States, (as well as in others not named,) there are numerous cases in which limitations *durante viduitate* were allowed, which are not cited for the reason that the question of their validity was not raised.

II. The Court did not err in charging as to the effect to be given to the inventory returned by the appellant Elizabeth A. to the County Court on 27th December, 1852. As a mere admission, this concludes her upon the familiar principle contained in the books, that when a party having property in his hands, or under his control, admits the title to be in another,

he is responsible for the truth of the statement, although the title should be altogether different from what he represented it. (Cowan and Hill's notes to Phil. on Ev. Vol. 1, 369.)

III.   But supposing the last position to be erroneous, then it is submitted that the property in controversy does not and never did belong to the appellant Elizabeth A.   There is no question under the proof, that it did belong to her husband, Richard J. Ball, when he and she were leaving Alabama in 1832, at which time it was seized by virtue of some kind of process for a debt of the husband and released by the appellant Elizabeth A. giving an order upon her guardian for the amount of the debt, in consideration whereof the husband told her that upon payment of the order, the property should be hers.   Now it cannot be contended that she was a purchaser of the property, because the funds in the hands of her guardian was not proved to be secured to her separate use, and in the absence of proof of that fact, it must be presumed to have been otherwise ; such being the fact, the payment of the money upon the order was a reduction of it into possession by the husband and it thereby became his absolutely.

IV.   Nor can the transaction be construed into the gift of the property to her separate use discharged of the marital rights of her husband.   At Common Law, gifts between husband and wife were not allowed, but they have for a long while been sustained in Equity, yet in such cases there must be satisfactory evidence that the husband has divested himself of the property and agreed to hold it as trustee for his wife. (1 Bright on Husband and Wife, 32, 33.)   In the case of a gift from a husband to his wife, "Nothing less will do than a clear irrevocable gift either to some person as a trustee, or by some clear and distinct act of his by which he divested himself of his property and engaged to hold it as a trustee for the separate use of his wife." (2 Swanston, 110 ; 5 Veasey, 71 ; 2 Story Eq. Juris. Sec. 1375.)   The gift to be effective must not only be made with the intention ex-

pressed in sufficient legal terms to bestow it to the sole and separate use of the wife, but the ordinary legal rights of the husband must be excluded, (2 Story Eq. Juris, Sec. 1381 and note 3, 1382 and 1383 ;) thus a gift or bequest to a married woman for her own use and benefit," or " to pay the same into her own proper hands to and for her own use and benefit," or other like expressions have been held not to amount to a sufficient expression of an intention to exclude the marital rights of the husband. (Ib. Sec. 1383 ; see also Nimno v. Davis, 7 Tex. R. 26, in which this Court cite and approve in full the foregoing passages in Story.)

*J. C. Robertson*, also, for appellee, confined himself in his argument to the assignment which presents as error the refusal of the Court to grant a new trial upon the affidavit of the jurors.

After citing the cases of Campbell v. Skidmore and Kilgore v. Jordan, he proceeds :

In Graham and Waterman on New Trials, this subject is discussed at length and all the authorities are collected, both English and American. And it can no where be found that a verdict was set-aside for misapprehension of the charge of Court, or for misapprehension of the testimony, or for deciding upon illegal testimony by affidavits of the jurors. The Courts say that considering the acts which might be used that it would open the door for endless litigation, fraud and perjury ; the admission of the affidavits of jurors to annul or impeach their verdict is condemned by the clearest principles of justice and public policy. (9 Geo. R. 121 ; 1 Mass. R. 530 ; 4 Johnson R. 487 ; 4 Burn. R. 180.)

If it were understood to be the law that a juryman might set aside a verdict by his affidavit, it might sometimes happen that a juryman, being a friend of one of the parties, or by being afterwards bribed, or otherwise controled by an artful litigant, being unable to bring over his fellows to his pur-

poses, the same end would be accomplished by his affidavit after verdict. Hence the policy that the rule should be inflexible..

*N. G. Bagley*, also, for appellee.

WHEELER, J. The grounds relied on for a reversal of the judgment are, 1st. That the District Court had not jurisdiction of that case. 2nd. That the Court erred in the charge to the jury, and in refusing instructions asked by the defendants. 3rd. That a new trial ought to have been granted upon the affidavit of certain of the jurors.

The jurisdiction of the Court is clearly maintainable on the authority of Howze v. Howze, (14 Tex. R. 232,) and the cases there cited. The defendants contested the plaintiff's title, and set up title in the wife; first, to the property absolutely, as the separate property of the wife ; secondly, to a life estate in the wife, under the provision of the will of the plaintiffs' ancestor. Either pretension, on the part of the defendants, entitled the plaintiffs to sue for the maintainance of their right in the District Court. It cannot be questioned that the jurisdiction conferred upon that Court by the law of its constitution and organization is sufficiently comprehensive to embrace this case. And, although it may be a case of which the Probate Court could take cognizance, that would not necessarily conclude the right of the District Court to entertain jurisdiction. These Courts may have concurrent jurisdiction in certain cases. But in cases, like the present, where questions of title are involved, or the decision of the case brings in question the construction of a will, it is proper to invoke the jurisdiction of the District Court, as the more appropriate tribunal for the adjudication of such questions. (Smith v. Smith, 11 Tex. R. 102, and cases cited ; Parker v. Parker, 10 Id. 83 ; Purvis v. Sherrod, 12 Id. 140.)

The charge of the Court complained of was to the effect, that the inventory returned by the widow was conclusive evidence against her upon the question of title, unless she acted in ignorance of her rights. And we are of opinion that this charge is not correct. The contrary was held in the case of White v. Shepperd. (16 Id. 167.) The effect to be given to the inventory, in cases like the present, has been brought under discussion in several cases lately decided; and the result of these cases is that the inventory thus returned is to be deemed but *prima facie* evidence of title in the estate, which may be rebutted by proof that, in point of fact, the title was not in the testator or intestate, but in another. (Carroll v. Carroll, and Cheatham v. Burnham, lately decided at Galveston.)

The widow was not estopped or concluded from asserting her right of separate property, although she had returned an inventory of the property as belonging to the estate of her deceased husband. Nor was it necessary, in order to admit proof of her title, that it should appear that, in returning the inventory, she acted in ignorance of her rights. The Statute (Hart. Dig. Art. 1151) declares that the inventory shall not be conclusive, if it be shown that the property was not separate or common property, as specified therein. It does not make the right to show by proof the true state of the title, depend upon the knowledge or ignorance of the state of the title, by the party, at the time of returning the inventory. Its effect is to make the inventory, but *prima facie* evidence as against the party, that the title is as represented in the inventory. And so it would be, it is believed, on general principles. It is not an estoppel in deed; and to constitute it an estoppel *in pais*, the admission it contains must have been acted on by others, who would be prejudiced in consequence, were the party who made the admission permitted to retract it. It must be such as that good faith and fair dealing towards others, who have received it as true, and acted upon it, forbid that it be retracted; which does not appear to be the

case in this instance. The defendants' evidence of title was admitted without objection ; and the material question to be determined is whether it was sufficient to have warranted a different verdict, had there been no error in the charge of the Court. We are of opinion that it was not. It is to be observed that the act or declaration, relied on as evidencing a transfer of title, occurred in a State where the Common Law prevailed, and its effect is to be determined accordingly. The declaration of the husband was, that if the money was paid upon the wife's order, the negro should be hers. The import of the language was rather to create an obligation or duty on the part of the husband to vest title in the wife, than to evidence a present transfer of the title. If it be admitted that the language evidenced an intention to vest the property in the wife for her separate and exclusive use, which would have been necessary to constitute it her separate property by the Common Law or the law of Alabama, (Nimms v. Davis, 7 Tex. R. 25, and authorities cited,) yet, it is conceived, it would not be held in that State to operate a present transfer of the property, or to create an obligation which a Court of Equity would enforce.

Although Courts of Equity will sustain a gift by a husband to the wife which amounts only to a reasonable provision for her, yet they require clear and incontrovertable evidence to establish such gift as matter of intention and fact. (2 Story Eq. Sec. 1375.) If the wife was entitled to have a provision made for her sole use on account of the appropriation of her money by the husband, it would only be of the sum thus appropriated, and it does not appear what that sum was. It may have been an inconsiderable amount. Possibly, if it appeared that it was of value sufficient, it might have been held by a Court of Equity, under the circumstances, that the property in the negro should be secured to the wife, or some equivalent provision should be made for her out of property of the husband. It has been ruled that where property of the

wife has been reduced into possession by the husband, yet if it appear that he did not intend to convert it to his own use, it is in law the property of the wife. (Hind's Estate, 5 Whart. 138.) And although the rule is that reduction into possession by the husband of his wife's choses in action is *prima facie* evidence of conversion to his own use, yet the presumption of intention may be repelled by disproof of the fact in the particular instance. (8 Barr. 191–2.) But the material question to be here determined is whether there was an actual transfer to the wife of the property in question ; and we think it must be held that there was not. It cannot, we think, be maintained, upon the evidence which the record discloses, of the mere oral declaration of the husband, unattended by any corresponding act, evidencing a transfer of the property in fact, that the wife acquired the title in the State of Alabama. In Bradshaw v. Mayfield, (12 Tex. R. 26,) this Court said, "Verbal sales and gifts, between husband and wife, ought not to be admitted, unless on clear and satisfactory proof that the property was divested out of the vendor, and vested in the vendee or donee." The case of Avery v. Avery, (12 Tex. R. 54,) goes farther, perhaps, than any other decided by this Court to maintain the right of the wife in this case. But, in that case, the husband, having removed from Georgia to the State of Louisiana, there had the title made to his wife, which the husband, in this case, declined to do, and it was on that title that her right was maintained. The equities of the wife, in that case, were as strong as in this ; but they were not supposed to invest her with the title.

The wife's claim of title derives no aid from what subsequently transpired in Mississippi and Louisiana. In the former State, the husband proposed a disposition of the slave as his own property ; and in the latter, although he seems to have contemplated asserting title in his wife, if it should become necessary to protect the property from his creditor, yet when it was proposed to him to execute a deed to his wife, which

he ought unhesitatingly have done, if it was his *bona fide* intention to secure the property to her separate use, he declined to do so. In fine, the evidence of title relied on, is of too equivocal, indeterminate and unsatisfactory a nature to amount to proof sufficient to establish a right of separate property in the wife. Had the jury so found, their verdict must have been set aside as not warranted by the evidence. The error in the charge, therefore, becomes immaterial, since it cannot have operated to the prejudice of the defendants. (James v. Thompson, 14 Tex. R. 463 ; 15 Id. 34 ; 18 Id. 811 ; Id. 21 ; 17 Id. 408.)

It is further insisted that the Court erred in refusing instructions asked by the defendants, to the effect that the limitation in the will of the life estate of the widow, during her widowhood, is a condition in restraint of marriage, and therefore void.

The general result of the modern decisions in the English and American Courts, upon this subject, is thus stated by Judge Story : " Conditions, annexed to gifts, legacies, and devises, in restraint of marriage, are not void, if they are reasonable in themselves, and do not directly or virtually operate as an undue restraint upon the freedom of marriage. If the condition is in restraint of marriage generally, then, indeed, as a condition against public policy, and the due economy and morality of domestic life, it will be held utterly void. And so, if the condition is not in restraint of marriage generally, but still the prohibition is of so rigid a nature, or so tied up to particular circumstances, that the party upon whom it is to operate, is unreasonably restrained in the choice of marriage, it will fall under the like consideration." (1 Story's Eq. Jur. Sec. 280.)

But while conditions in restraint of marriage are held to be void, it is otherwise with limitations of the use of the thing given or bequeathed, until the donee or legatee shall marry. Such limitations of the use are not deemed to be in

restraint of marriage, and are held valid. Thus, it has been said, "We must, however, be careful not to confound limitations with conditions ; for limitations may be good, notwithstanding they are seemingly in restraint of marriage ; and were so by the Civil as well as the Common Law. As, for instance, where the meaning of the testator is not to forbid marriage, but to grant the use of the thing bequeathed until the legatee shall marry ; (Swinburne, part 4, Ch. 12, Sec. 6 ;) or where the prohibition of marriage is not made conditionally by this word, *if*, (as I make thee my executor *if* thou dost not marry,) by other words or adverbs of time ; as when the testator willeth that his daughter or wife shall be executrix, or have the use of his goods *so long* as she shall remain unmarried. Agreeably thereunto are the laws of this realm of England, wherein there is a case that one of the Kings of this realm did grant to his sister the manor of D, *so long* as she should continue unmarried ; and this was admitted to be a good limitation in law, but not a condition." (Swinburne, part 4, Ch. 12, Sec. 19 ; per Kennedy, J., in Middleton v. Rice, 6 Penna. L. Jour. 234 ; and see particularly Commonwealth v. Stauffer, 10 Barr, 350, 354, 357, Opinion by Ch. J. Gleson ; 1 Rop. on Leg. 797 *et seq.* and notes ; 1 Story's Eq. Jur. Sec. 276 to 291 and notes ; Hare & Wallace's Notes to White and Tudor's Leading Cases in Eq., 71 Law Lib. 266 to 337, Scott v. Tyler ; 1 Jarmon on Wills, 698 and notes.)

We deem it unnecessary in the present case to enter upon an examination of the numerous authorities upon this subject ; for they are all (at least the modern authorities) agreed that where, as in this case, property is limited to a widow until marriage, and upon marriage then over, the limitation is good. "It is difficult" (says Sir J. Wigram, V. C.) "to understand how this could be otherwise, for in such a case there is nothing to give an interest beyond the marriage. If you suppose the case of a gift of a certain interest, and that an interest sought

to be abridged by a condition, you may strike out the condition, and leave the original gift in operation. But if the gift is until marriage, and no longer, there is nothing to carry the gift beyond the marriage." (Morly v. Rennoldson, 2 Hare, 580.) The limitation in this case was unquestionably valid; the use of the property was determined by the marriage of the widow, and the Court did not err in refusing the instruction, to the effect that it was a condition in restraint of marriage.

It remains to inquire whether there was error in refusing to grant a new trial upon the affidavits of jurors. And there clearly was not. The generally received doctrine is that the affidavits of jurors shall not be received to impeach their verdict. And for the obvious reason that it would open a door for tampering with jurors, and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under the sanction of an oath. The subject was very fully examined in the case of The State v. Freeman, (5 Conn. R. 384,) and after reviewing the authorities, the Court concluded that "almost the whole legal world is adverse to the reception of the testimony in question," (that of the jurors who tried the case,) "and on invincible foundations." In Graham & Waterman on New Trials it is said, "It is admitted, notwithstanding a few adjudications to the contrary, that it is now well settled, both in England, and, with the exception of Tennessee, perhaps in every State of this Confederacy, that such affidavits cannot be received, and we believe upon correct reasoning." (3 Gr. & Wat. on New Trials, 1429.) The numerous cases there collected and reviewed, confirm the observation. In Tennessee, where the affidavits of jurors are admitted to impeach their verdict; it is said they must be received with great caution. (4 Humph. 516.) In Ohio, it is said, they are not in general admissible for that purpose, and can only be received under certain circumstances, where a foundation has been first

Little v. Birdwell.

laid by other evidence. (Farrer v. The State, 2 Ward. Ohio R. 54.) The better opinion is that they ought not in general to be admitted to impeach the verdict, and, if received at all for that purpose, it ought only to be under special circumstances. The course of decision in this Court has been decidedly to discountenance applications for new trials, founded on the affidavits of jurors; and the consequence is that few cases of this kind have occurred in our practice. (Kilgore v. Jordan, 17 Tex. R. 341; 1 Id. 726; Id. 475.)

But if the affidavits were admitted in the present case, they show no ground for granting a new trial. The paper on which the jurors say, if before them, they would have returned a different verdict, afforded not the slightest evidence of title, nor was there any reason for giving it the effect they proposed. Their affidavits show that they entirely mistake the character of the paper, and, if allowed, would have given it an improper influence upon their deliberations.

On the whole, we are of opinion that there is no error in the judgment, and it is affirmed.

Judgment affirmed.