WARREN WESTON *vs.* JAMES B. GILMORE.

*Verdict—cannot be changed, as to damages, after affirmation.*

A jury were allowed to seal up their verdict after adjournment of court for the day, and then to separate for the night; in the morning it was opened and affirmed by eleven, by consent, the twelfth being absent by leave after this consent was obtained. The verdict, as affirmed, was for nine dollars and thirty-one

cents; a few minutes after its affirmation—the jurors having retained their seats—they made known to the court that they intended to give a verdict for $74.31; being $65 sued for and $9.31 interest, and that by mistake, only the latter sum was inserted in the blank. The defendant's counsel would not consent to its correction. After awaiting the return of the twelfth juror, and finding that he confirmed the statement of his fellows, the court allowed the jury to retire, and bring in a new verdict for the sum of $74.31; *held*, that it must be set aside, and a new trial granted.

ON EXCEPTIONS.

This was an action for money had and received to recover sixty-five dollars, paid for a certain patent right, the plaintiff claiming that he had rescinded the contract for fraud of the defendant, and also contending that the contract was only a conditional one, and that the money was recoverable back because the condition had not been performed.

The case was committed to the jury just before adjournment at night, with authority to seal the verdict after adjournment of court for the day, and return the same to court upon the following morning. In the morning the sealed verdict was opened, declared and affirmed by the jury for the sum of nine dollars thirty-one cents, and the clerk minuted the figures of it in pencil upon the docket. This was done by eleven of the jurors, by the consent of counsel on both sides, the twelfth juror not being in his seat. Some time afterwards, but before the jury had separated or left their seats, and before the succeeding cause was called for trial, the foreman called the plaintiff's counsel to him and asked if it would be improper to inform the court that there was a mistake in the verdict; and thereupon the said counsel informed the court, and upon inquiry by the court, all of the eleven jurors affirmed to the court that the nine dollars thirty-one cents was the sum by them ascertained to be due as interest upon the $65 claimed, and that they intended to render a verdict for a sum equal to said sum of $65 and nine dollars thirty-one cents added together.

Whereupon counsel for defendant was requested to allow the eleven jurors to retire for the purpose of correcting their verdict, subject to the same objections that would exist against the twelve

Weston *v.* Gilmore.

jurors doing so, but he refused, upon which the jury were kept in their seats, while another cause was on trial before another jury, and for several hours till the other juror returned in court, when he made the same statement as to the error, which his fellows had; and the court then ordered the jury to retire and correct their verdict, by making it what they intended to make it. The jury did so, returning a verdict for seventy-four dollars and thirty-one cents, which was accepted and affirmed as the verdict in the case. The twelfth juror had gone home on business, the clerk obtaining consent for him, after counsel had consented to take the verdict in his absence.

To this order and direction of the court the defendant excepted.

*R. K. Sewall*, for the defendant.

*Wm. H. Hilton*, for the plaintiff.

BARROWS, J. The two classes of cases relating to erroneous or defective verdicts, and the mode of correction to be pursued, are carefully considered in *Little* v. *Larrabee*, 2 Maine, 37.

From that case and the cases there cited, and subsequent decisions in the same line, we gather that in those of the first class, where the error is merely formal, and has no connection with the merits of the cause, and the amendment when made in no respect impairs or changes the rights of the parties, the verdict may be amended under the direction of the court after it has been affirmed and constructively recorded, and after the jury have separated, and even at a subsequent term. *Hoey* v. *Candage*, 61 Maine, 263; *Barnard* v. *Whiting*, 7 Mass., 358. But in those of the second class, where the error has been committed by the jury, either by returning a verdict for the wrong party, or for a larger or smaller sum than they intended, and by the amendment proposed the verdict would be reversed, or the damages increased or diminished, and the substantial rights of the parties thus changed, when the verdict has been affirmed in open court, and the jury have separated and become accessible to the parties, the only

remedy for a mistake is by setting the verdict aside and granting a new trial.

In *Goodwin* v. *Appleton*, 22 Maine, 453, the verdict had not been affirmed nor does it appear that the jury had separated, but the case was re-committed to them on the spot with further instructions by the presiding judge.

In *Ward* v. *Bailey*, 23 Maine, 316, relied on by the plaintiff, the jury had not separated and no opportunity for any unfair practices with them had occurred. The absolute impossibility of such a thing is made the ground of distinguishing that case from *Little* v. *Larrabee*, and justifying the re-commitment to them with more precise instructions.

But the case at bar cannot be distinguished in any of its essential facts from *Snell* v. *Bangor Steam Navigation Co.*, 30 Maine, 337. In that case the court saw no reason to doubt that the error which the jury had been allowed to correct after the affirmation of a sealed verdict was one of a clerical character, or capable of being corrected by computation merely, upon the principles on which the jury must necessarily have acted in finding for the plaintiff, and they expressly declare that there was no suggestion that the jury had in fact been influenced by any one, or that any conversation had taken place between any member of the panel and other persons during the separation—still they sustained the exceptions.

We have not the remotest suspicion that there was any unfair practice in the present case; but we think it better that a party should occasionally suffer the delay and expense of a new trial, than that such a source of embarrassing and troublesome inquiries, with doubtful and possibly pernicious results, should be opened as would inevitably follow the allowance of the re-commitment of cases to juries after verdict rendered and affirmed, and opportunity afforded for them to be influenced by conversation with the parties or others.

Jurors should understand that the affirmation of their verdict in open court is not a matter of mere form—that it is their duty

Bowdoinham v. Phippsburg.

to attend to it as it is read to them, and not to allow it to go upon record as their verdict unless it truly expresses the conclusion which they reached and agreed upon. That their duty to the case is not at an end until their verdict has been not only rightly written out, but rightly read to and affirmed by them, may be seen by a reference to the case of *Bucknam* v. *Greenleaf*, 48 Maine, 394. In that case it was held that the judge had no power to direct the correction of a verdict wrongly read and affirmed, even though the written verdict, as well as the affidavits of the jurors, showed how they intended to decide the case. It is not necessary to carry the doctrine we hold to such an extreme in order to conclude that in the case before us, the entry must be

*Exceptions sustained.*

APPLETON, C. J., DICKERSON, DANFORTH and VIRGIN, JJ., concurred.