## COMMERCIAL STANDARD INS. CO. et al. v. MILLER.

### No. 1529—5767.

Commission of Appeals of Texas, Section A.
April 21, 1932.

Eckford & McMahon and W. Porter Bondies, all of Dallas, for plaintiffs in error.

Caldwell, Gillen, Francis & Gallagher, of Dallas, for defendant in error.

SHARP, J.

C. R. Miller filed this suit in the district court of Dallas county against W. M. Diamond, R. J. Lowry, and Commercial Standard Insurance Company to recover damages alleged to have been sustained because of an automobile collision. Based upon findings of the jury to special issues submitted to them, the trial court entered judgment against Miller and in favor of the other parties. Miller appealed to the Court of Civil Appeals at Dallas, and the judgment of the trial court was reversed and remanded for a new trial. 25 S.W.(2d) 659. The case is before the Supreme Court on writ of error.

Plaintiff in error complains of the opinion

of the Court of Civil Appeals wherein it is held that the jury, in answering "No" to special issues 7, 8, and 9, intended to answer "Yes," and "that if the juror (who appears to have been the foreman) who wrote the answers had written the word 'no' to the answer of each of said special issues, he did so through a mistake, and the answer 'yes' should have been written in response to each of the issues."

Defendant in error admits that the sole question presented by defendant in error in his motion for a new trial was that the jury by inadvertence or mistake failed to properly record their verdict as to special issues Nos. 7, 8, and 9. This was the sole question on appeal.

Special issues Nos. 7, 8, and 9 and the answers thereto read as follows:

"No. 7: Was Howard Cochran, the driver of the Chevrolet car at the time of the collision on the occasion in question, performing any service which he had been employed to perform for the defendants, W. M. Diamond and R. J. Lowry? Answer: No.

"No. 8: Was Howard Cochran, the driver of the Chevrolet car at the time of the collision on the occasion in question, acting within the general scope of his authority, and in the course of his business for the defendants, W. M. Diamond and R. J. Lowry? Answer: No.

"No. 9: Was Howard Cochran, the driver of the Chevrolet car at the time of the collision on the occasion in question, upon a mission and/or errand directed by, either expressly or impliedly, authorized by either the defendant W. M. Diamond and/or R. J. Lowry? Answer: No."

The facts seem to be undisputed that the jury returned their answers to the special issues, as above stated, in open court, as being the unanimous verdict of the jury upon those issues, and that the jury had been excused and they had separated and dispersed to their various homes or places of occupation; that subsequent to this the defendant in error obtained affidavits from eleven of the jurors, the twelfth being absent or out of the state, and no affidavit was obtained from him. These affidavits were attached to a motion for new trial and presented to the trial court for consideration. No other testimony was offered, and the trial court overruled the motion for rehearing.

In order to present the matter clearly, we will copy extracts from some of the affidavits obtained from the jurors.

William Lange stated: "We do not understand how this mistake took place, unless it was due to the confusion in the minds of the jurors as to the exact meaning of these questions."

D. H. Whisnand said: "All the men on the jury were hurrying just as fast as they could and I believe most of the other members of the jury were like I was and that the questions were placed hurriedly before them by one member of the jury reading them and the same were answered without understanding what the question was."

C. H. Harkey said: "If we answered these questions 'No' as I have been told we did, it was through a mistake due to the misunderstanding of these issues. * * * There was a great deal of confusion and it was sometimes very difficult to understand what we were trying to vote on."

C. V. Howard stated: "If a mistake has been made in answering these issues it was simply due to the fact that we did not understand them. There were nearly forty issues submitted to us and it would take a Philadelphia lawyer to figure them out, that is the only reason I can account for the mistake."

C. H. Chandler said: "I do not understand how the answers to Issues 7, 8 and 9 could have been rendered as they were, unless it was just due to the hurry that we were in and the general mixup on that account."

C. R. Lange said: "As I have stated, there was a great hurry and everyone was trying to answer these questions quickly so we could get home and it was no doubt due to this agitation that this mistake was made."

Extracts from the other affidavits, in our opinion, are unnecessary. The above is sufficient to show the trend of the affidavits made by the jurors.

The Court of Civil Appeals held that "the legal effect of these affidavits is a unanimous assertion that the three questions were mistakenly answered 'no,' when they should have been answered 'yes.'"

The court further held, in effect, that, if a clerical error was made in recording the verdict of the jury, this fact may be shown by the affidavits of the jurors and concluded that "in cases where the affidavits of the jurors are not at variance, but unanimously speak the fact of a mistake, then no issue of disputed fact is made and no necessity for evidence to determine a disputed issue exists."

The case of Caylat v. Railway Co., 113 Tex. 131, 252 S. W. 478, is cited as an authority precisely in point upon this question and therefore controlling. It is stated in that opinion that the great weight of authority supports the proposition that a unanimous mistake of the jury in the nature of a clerical error in writing or reporting their verdict already arrived at may be shown by the affidavits of the jurors, and, where the evidence is conclusive that such mistake was made, relief may be granted.

▆▆▆ After reviewing the many authorities, the court held that, when properly presented before the trial court, the parties had a right

to controvert the motion and to have the jurors examined in open court; that the trial court was vested with discretionary power to deny it, unless the evidence was of such clear and convincing character as to admit of no other reasonable conclusion than that a unanimous mistake in the nature of a clerical error has been made.

Let us test the rule just stated in the light of the facts involved here. In the first place the trial court exercised its discretion and denied the motion for rehearing. As we understand the opinion of the Court of Civil Appeals, it held that the testimony did not raise an issue of fact for the trial court to determine, but the legal effect of the affidavits is an uncontroverted statement that the jury intended to answer the issues "Yes" when they mistakenly answered them "No."

In our judgment, the affidavits made by the jurors show upon their face that they are not free of uncertainty upon this matter. Some show that they were in a hurry, and that the answers were made without understanding what the questions were. Some show that the questions were many and confusing and they did not understand them.

■ It has long been the established rule in this state that affidavits of jurors shall not be received to impeach their verdict. This rule is firmly based upon the wisdom and experience of our jurisprudence and has been recognized by the courts of this state from the very beginning of its history. Mason v. Russel's Heirs, 1 Tex. 721; Handley v. Leigh, 8 Tex. 129; Little v. Birdwell, 21 Tex. 597, 73 Am. Dec. 242; Davis v. State, 43 Tex. 191; Wills Point Bank v. Bates, 72 Tex. 142, 10 S. W. 348; International & G. N. R. Co. v. Gordon, 72 Tex. 51, 11 S. W. 1033; Letcher v. Morrison, 79 Tex. 241, 14 S. W. 1010; St. Louis S. W. Ry. Co. v. Ricketts, 96 Tex. 71, 70 S. W. 315; Bradley v. Texas & P. Ry. Co. (Tex. Com. App.) 1 S.W.(2d) 861; Texas Employers' Ins. Ass'n v. Eubanks (Tex. Civ. App.) 294 S. W. 905; Ellerd v. Ferguson (Tex. Civ. App.) 218 S. W. 605; Gulf, C. & S. F. R. Co. v. Moser et al. (Tex. Civ. App.) 277 S. W. 722; Farrand v. Houston & T. C. R. Co. (Tex. Civ. App.) 205 S. W. 845; Hermann v. Schroeder (Tex. Civ. App.) 175 S. W. 788. See, also, Thompson on Trials, 2d Volume, § 2618.

In the case of Little v. Birdwell, 21 Tex. 597, 73 Am. Dec. 242, the rule established in this state with respect to receiving affidavits of jurors for the purpose of impeaching their verdict is discussed as follows: "The generally received doctrine is that the affidavits of jurors shall not be received to impeach their verdict. And for the obvious reason that it would open a door for tampering with jurors, and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under the sanction of an oath. The subject was very fully examined in the case of The State v. Freeman (5 Conn. 384), and after reviewing the authorities, the Court concluded that 'almost the whole legal world is adverse to the reception of the testimony in question,' (that of the jurors who tried the case), 'and on invincible foundations.' In Graham & Waterman on New Trials it is said, 'It is admitted, notwithstanding a few adjudications to the contrary, that it is now well settled, both in England, and, with the exception of Tennessee, perhaps in every State of this Confederacy, that such affidavits cannot be received, and we believe upon correct reasoning.' (3 Gr. & Wat. on New Trials, 1429)."

In Thompson on Trials, Second Volume, § 2618, the author, in a clear statement, announces the rule which excludes the testimony of jurors to impeach their verdict, concerning matters taking place during their retirement, as follows: "Upon grounds of public policy, courts have almost universally agreed upon the rule that no affidavit, deposition, or other sworn statement of a juror will be received to impeach the verdict, to explain it, to show on what grounds it was rendered, or to show a mistake in it; or that they misunderstand the charge of the court; or that they otherwise mistook the law, or the result of their finding; or that they agreed on their verdict by average, or by lot. * * * Neither is it admissible to show by the oath of a juror that he did not agree to the verdict as rendered; * * * or that the verdict which was rendered was not, in fact, the verdict of the particular jurors. It will not be admissible thus to show that the verdict was by mistake returned as the verdict of the whole jury, when some of them were, in fact, in favor of finding it for the other party." See authorities collated thereunder.

■ By the enactment of article 2234, R. S. 1925, the Legislature relaxed the inflexible rule existing in this state that a juror could not be heard by affidavit or testimony to impeach the verdict by permitting the jurors, in open court, to testify in cases where the ground of a motion for new trial is misconduct of a jury. Other than that, the rule has not been relaxed. In the case of Bradley v. Texas & P. Ry. Co. (Tex. Com. App.) 1 S.W.(2d) 861, 863, Judge Leddy, in rendering the opinion of the court, said: "Prior to the enactment of article 2234, it had been consistently held by the courts of this state that a juror could not be heard by affidavit or testimony to impeach his verdict. The statute was passed to modify this firmly fixed rule. We think the evident purpose of this statute was to permit jurors to testify with reference to some overt act of misconduct on the part of some member of the jury or a third person, and of such a nature as might be rea-

sonably calculated to improperly influence some member of the jury in reaching a verdict."

■ If we concede, which we do not, the soundness of the rule which seems to prevail in some jurisdictions that, where the error at the time of the announcement of a verdict is a unanimous one, by all the jury, and that the error consisted, not in making up their verdict on wrong principles or on a mistake of facts, but in an omission to state correctly in writing the verdict to which they had by a due and regular course of proceeding honestly and fairly arrived, this may be shown by affidavits of the jurors, still the facts of this case as disclosed in the affidavits of the jurors failed to bring it under that rule. The facts as embraced within the affidavits of the jurors fail to show that the jury were unanimously mistaken in the answers made to the special issues; that the verdict as announced or delivered was different unanimously from the verdict as assented to in the jury room at the time of voting; that there was no uncertainty of their intention to answer them one way; that all of the jurors were of one mind in answering the special issues, and that it was a unanimous mistake in writing down the answers thereto, and that the verdict had been honestly and fairly arrived at. On the contrary, the affidavits show the very opposite; and plainly show that they violate the very rule invoked in their support.

Courts should be very slow to overturn the rules long established for the protection of litigants and the verdicts of juries rendered in due and orderly proceedings. To permit litigants to obtain from jurors, after they have been separated and dispersed from under the direction of the court, affidavits impeaching their verdicts, would be productive of more mischief than good. Certainly, it would not add anything to the verity of verdicts and judgments and safeguard the rights of litigants. We see no sound reason for permitting ex parte affidavits from jurors, as was done in this case, to be introduced in evidence for the purpose of overturning their verdict. If a state of facts should exist that would justify the trial court inquiring into a verdict rendered by a jury, it should be done in open court where all parties may see and hear the witnesses and not by affidavits obtained from jurors. The affidavits obtained from the jurors in this case constituted no evidence and were not admissible. The trial court was correct in overruling the motion for a new trial and in refusing to overturn the verdict of the jury. The Court of Civil Appeals erred in reversing and remanding the judgment of the trial court.

Therefore we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the trial court be in all respects affirmed.

**CURETON, C. J.**

Judgment of the Court of Civil Appeals reversed, and judgment of the District Court affirmed.