## MOORE v. COMMERCIAL STANDARD INS. CO.

### No. 5677.

Court of Civil Appeals of Texas. Amarillo.

June 11, 1945.

Rehearing Denied July 9, 1945.

K. H. Dally, of Borger, and Norman Coffee, of Stinnett, for appellant.

Underwood, Johnson, Dolley & Wilson, of Amarillo, for appellee.

PITTS, Chief Justice.

This is a compensation case in which an award was made by the Industrial Accident Board to appellant, George W. Moore, and appellee, Commercial Standard Insurance Company, appealed. Appellant filed a cross-petition alleging his cause of action together with jurisdictional facts and, without objections, the trial court realigned the parties for trial by order entered designating appellant as plaintiff and appellee as defendant.

Appellant alleged that he was the victim of an accident in which he sustained a hernia on July 13, 1943, while in the course of his employment and that it resulted in his permanent and total disability, all of which was denied by appellee.

The case was tried to a jury which found that appellant sustained an injury to his left side on July 13, 1943, while doing heavy lifting in the course of his employment; that the injury resulted in a hernia that appeared suddenly and immediately following the injury and was accompanied by pain; that appellant sustained a loss of capacity to work as a result of the hernia; that as a result of the hernia he was totally incapacitated for 90 weeks from July 13, 1943, for which incapacity the jury awarded appellant the sum of $50 per week and found he would be sixty per cent. partially incapacitated in the future.

The Workmen's Compensation Law on the subject of "hernia" provides in article 8306, sec. 12b, Vernon's Ann.Civ.St., that before a recovery can be had in such a case definite proof must be made of an injury that resulted in a hernia which appeared suddenly and immediately following the injury; that the injury was accompanied by pain and "that the hernia did not exist in any degree prior to the injury for which compensation is claimed."

In connection with other issues submitted to the jury the trial court, in compliance with the requirements of the law, inquired if the hernia existed in any degree prior to the injury. But without any objection, in so far as the record discloses, the inquiry was made in special issue No. 9 in the following language: "Do you find from a preponderance of the evidence, if any, that said hernia, if any, on the left side of the said plaintiff, George W. Moore, did not exist in

any degree before the accident, if any, on the 13th day of July, 1943? Answer 'Yes' or 'No.' "

The jury answered special issue No. 9, "No." Because of the negative answer to the said issue appellee moved the trial court for judgment. The motion was sustained and the trial court rendered judgment for appellee. In due time appellant filed his motion for a new trial and had a summons issued for each juror to appear as a witness for the hearing on the motion. It was agreed by stipulation between the parties at the hearing that the sheriff could not find four of the jurors for service, but eight of the jurors were served and appeared and testified at the hearing on the motion for a new trial. The said motion was overruled by the trial court and appellant perfected an appeal to this court.

The case is before this court on one point of error only, to the effect that the trial court should have granted appellant a new trial, and it erred in "overruling the plaintiff's motion for a new trial, since the answer of the jury to special issue No. 9 did not reflect the finding of the jury, but was in the nature of an unanimous clerical error."

At the hearing on the motion for a new trial W. K. Germany testified, in effect, that he was foreman of the jury; that in the deliberation of the jury he read and they discussed each issue chronologically as they came to them, beginning with the first, decided how they would answer each question, after which he wrote the answer down on a separate piece of paper; that after an answer had been agreed upon he again read to the jury the question and the answer they had agreed upon and then wrote the answer of the jury to that issue on the sheet of paper provided for that purpose; that special issue No. 9 was discussed in its regular order after the preceding eight issues had been answered and the jury all agreed that appellant did not have a hernia prior to July 13, 1943, and the witness testified further, "That is right; I remember that I read the question and we decided, or that the remark was made, that he did not have a hernia, so we put down 'No;' " that he put down "No" as an answer to special issue No. 9 because it was his opinion that such answer "reflected the finding of the jury that he did not have a hernia prior to the 13th day of July, 1943;" that shortly after the verdict was brought into court and they were discharged, the jury discovered "the true meaning of the answer 'No' to special issue

No. 9," and they all got together then and talked it over, went back into the courtroom and told appellant's counsel and perhaps the trial judge what they had done and then learned for sure for the first time that a negative answer to special issue No. 9 meant that appellant "did have a hernia prior to the 13th day of July, 1943."

The witness, Germany, testified on cross-examination that the jury discussed each issue in numerical order and decided how each should be answered and he, as foreman, wrote down on a separate piece of paper the jury's answers and then verified each answer with the jury before writing down the answer upon the jury verdict; that such procedure was followed in considering and answering special issue No. 9; that "the jury was in agreement that the answer to be given to special issue No. 9 was the word, 'No;' " that such answer was given because the jury found, "He did not have and wrote down the word 'No,' " and that he, as foreman, announced the verdict of the jury in open court.

The other seven jurors who testified at the hearing on a motion for new trial corroborated the testimony of the foreman, Germany, and all of them testified that the jury agreed appellant did not have a hernia before July 13, 1943, and, since he did not have a hernia before the said date, they wrote down the word "No" in answer to special issue No. 9 on the verdict of the jury.

■ It is the well-established rule that a juror may not preserve or destroy his verdict by testifying to the mental processes by which he reached the verdict, but the rule is likewise well established that relief should be granted when it has been clearly shown and established that there was made a unanimous mistake in the nature of a clerical error in announcing or transcribing a verdict of a jury already arrived at by them. A very thorough discussion of the latter rule with its carefully prescribed limitations is found in the case of Caylat v. Houston E. & W. T. R. Co., 113 Tex. 131, 252 S.W. 478, 480, in which case certain questions were certified to the Supreme Court by the Court of Civil Appeals and the Commission of Appeals, with the approval of the Supreme Court, answered the questions and directed that a new trial should be granted.

In that case suit was filed to recover damages for injuries that resulted from a

collision between plaintiff's automobile and defendant's train. Among other issues submitted to the jury, it was asked in issue No. 13 if plaintiff would or would not, by the exercise of certain precautions, have seen the train in time to have prevented the collision and the jury was directed to answer the issue, "He would" or "He would not," just as it found. The jury answered, "He would," which convicted the plaintiff of contributory negligence. The jury was polled and each juror answered that such was his verdict. The verdict was received and filed, the jury discharged, and judgment entered for defendant. Plaintiff filed a motion for a new trial and attached thereto affidavits from each of the twelve jurors stating, in effect, that the jury thoroughly discussed issue No. 13 and unanimously agreed that plaintiff had not been guilty of any negligence or contributory negligence as inquired about in the question, and they understood at the time that answering "He would" to issue No. 13 clearly reflected and reported their finding in the said issue and meant that plaintiff was not guilty of the negligence inquired about; that they had since learned that such answer meant that he was guilty of such negligence; that they now state that the answer, "He would" to issue No. 13, "was written by mistake and was the result of confusion, and misunderstanding;" that the mistake was not discovered until some time after the verdict was received and the jury was discharged.

Upon these affidavits presented to the trial court plaintiff moved for judgment in his favor.

After thoroughly reviewing the numerous cases passing on the rule in question in various jurisdictions, the court said: "The great weight of authority, both in this country and in England, is to the effect that a unanimous mistake of the jury, in the nature of a clerical error, in writing or reporting their verdict, already arrived at —as contradistinguished from an act constituting misconduct or fraud on the part of the jury, or a mistake of fact or law arising in their deliberations, as for example their misinterpretation of the evidence or the charge of the court, or of the legal effect of their verdict—is not misconduct of the jury, does not come within the rule above announced, and may be shown by the affidavits of the jurors themselves; and where the evidence is conclusive that such mistake was made, relief may be granted." A long list of authorities is then cited from various jurisdictions in support of such a rule.

The court likewise copied, with its approval, from Mr. Wigmore in another case a statement, as follows: " * * * When the verdict as announced or delivered is different unanimously from the verdict as assented to in the juryroom at the time of voting, the case is the same as that of a deed which by mutual or common mistake does not conform to the original agreement as avowedly made by the parties to the deed. Just as such a deed may be reformed in equity, upon satisfactory proof of the error, so such a verdict may be corrected to represent the verdict actually agreed upon by the jury as a whole. * * *"

The court then discusses the reason for such a rule, the reason for granting a new trial rather than correcting the verdict to conform to the finding the jury actually made, and concludes with the following statement: " * * * We are clearly of the view that the safer and more salutary rule is to deny a correction in such cases, and to order a new trial as to the full measure of relief against the mistake."

Appellee contends that the rule laid down in the Caylat case cited above authorizing a new trial when it has been conclusively shown that a unanimous mistake was made by the jury in transcribing and announcing its verdict has been overruled by the Supreme Court in more recent cases, namely, Commercial Standard Ins. Co. v. Miller, Tex.Com.App., 48 S.W.2d 618, and Burchfield v. Tanner, Tex.Sup., 178 S.W.2d 681, but we do not share in that view.

In the first of these cases affidavits of the jurors were attached to a motion for a new trial and it was claimed that wrong answers were given by the jury by mistake to three issues in a damage suit as a result of an automobile collision. The complaining party relied solely on the affidavits of the jurors attached to the motion for a new trial. The trial court overruled the motion for a new trial. The Court of Civil Appeals reversed and remanded the case and it reached the Supreme Court on a writ of error and the Commission of Appeals, approved by the Supreme Court, said [48 S. W.2d 620]: "In our judgment, the affidavits made by the jurors show upon their face that they are not free of uncertainty upon this matter. Some show that they were in a hurry, and that the answers were made without understanding what the questions were. Some show that the questions

were many and confusing and that they did not understand them."

The court further stated that the affidavits of the jurors failed to show that the jury were unanimously mistaken in the answers made to the issues or that the announced verdict was different unanimously from the verdict reached in the juryroom; and, in effect, said that the rule in the case of Caylat v. Houston, E. & W. T. R. Co., 113 Tex. 131, 252 S.W. 478, did not apply. The court then held that because of the failure to show a unanimous mistake of the verdict by the jury the trial court properly overruled the motion for a new trial and reversed the judgment of the Court of Civil Appeals and affirmed the judgment of the trial court.

In the case of Burchfield v. Tanner, supra, the suit was one for special damages growing out of the sale of cotton seed for planting purposes. The jury in an effort, under the evidence, to calculate the quantity of cotton seed as found by a proportion of the weight of cotton seed to that of the weight of seed cotton, lint and all, became confused in trying to distinguish between the meaning of "cotton seed" and "seed cotton" and gave an erroneous answer to an issue that allowed plaintiff too much cotton seed at a fixed price and that was wholly inconsistent with the evidence. When the verdict was returned the jury was polled and each juror answered it was his verdict, after which they were discharged. Three days after the verdict the plaintiff filed in the trial court a remittitur and the the next day he filed a motion for judgment and attached affidavits of all the jurors to the motion stating that the answer to the issue in question was a unanimous mistake. Nine days later the trial court heard plaintiff's motion for judgment and all the jurors were present and were tendered as witnesses on the issue of unanimous mistake, but it was agreed between the parties that all jurors would testify consistently with the statements made in their affidavits and the affidavits only were introduced as evidence. The trial court considered the affidavits and the remittitur and made adjustments in other portions of the jury verdict to make it consistent with the remittitur and the plaintiff, at the trial court's suggestion, filed a further remittitur and the trial court then rendered judgment for plaintiff, from which judgment an appeal was perfected to the Court of Civil Appeals. The Court of Civil Appeals required a further remittitur to be filed by plaintiff, then appellee, after which the said court made further adjustments and then reformed and affirmed the judgment of the trial court. The case then went to the Supreme Court on a writ of error.

The Commission of Appeals, with the approval of the Supreme Court, says it has not seen fit to extend the rule in the Caylat case beyond the limits there carefully prescribed. The court further states [178 S.W. 2d 683]: " * * * The Caylat case, supra, expressly and directly holds that after a jury has been discharged and its members have separated the only remedy for a mistake in the nature of a clerical error in transcribing a verdict is to set aside the verdict and grant a new trial. That is the relief and the only relief which the court is authorized to grant."

The court then quotes from the case of Weston v. Gilmore, 63 Me. 493, as the same is found in the Caylat case, 113 Tex. 131, 252 S.W. 482. It then concludes with the following statement: "The vice in the trial court's judgment was not that same was excessive in amount; its vice lay in the fact that the court had no authority to substitute its finding for that of the jury and in that way prevent what would otherwise have been, in the light of the pleadings and evidence, a conflict in findings."

As we understand the Burchfield case, the Supreme Court followed the rule in the Caylat case and reversed the judgments in both courts below and remanded the cause.

In the instant case, the failure of the jury to properly record their answer to special issue No. 9 was a failure to state correctly in writing the verdict that had, by a due and regular course of proceedings, been arrived at by them. It is undisputed that the verdict as written was different from the unanimous verdict arrived at in the juryroom, and it is shown by the testimony of all eight jurors that there was no uncertainty as to the intention of all of the jurors to answer issue No. 9 that the hernia did not exist in any degree before the accident on the 13th day of July, 1943. It appears that the jurors, like other average jurors, were not recent students of the English language such as would immediately recognize and clearly observe the difference between an affirmative and a negative answer to a question ·propounded in such negative form as that of special issue No. 9. If the trial court had instructed the jury to answer the issue some way other

than "Yes" or "No" and had, for example, directed them to answer special issue No. 9, "The hernia did exist prior to July 13, 1943," or "The hernia did not exist prior to July 13, 1943," just as they found, the jury probably would have had no trouble with the negative form of the question, which form followed the language of the statute as given.

It is our opinion that the rule laid down in the Caylat case has not been overruled and that the instant case comes clearly within the rule laid down in that case. While only affidavits were tendered in the Caylat case, in the instant case eight of the jurors, all that could be found by the sheriff, testified in open court on the issue and submitted themselves to cross-examination. They testified conclusively with one accord that a unanimous mistake was made in their answer and we are of the opinion that the trial court should have sustained appellant's motion for a new trial. It necessarily follows from these conclusions that the judgment of the trial court must be reversed and the cause remanded, and it is so ordered.

### On Motion for Rehearing.

Appellee's motion for a rehearing raises no questions that have not already been properly disposed of in the original opinion but it does request supplemental findings of fact. After a careful consideration of the entire record, the briefs, our original opinion in connection with the said motion and request, we believe findings on the subject matter requested have heretofore been made in our original opinion.

Appellee has requested a supplemental finding to the effect that the jury agreed upon the word "No" as an answer to special issue No. 9, and approved the act of the foreman in writing such word as their answer to the said special issue. A finding to that effect was made in our original opinion in the language of the foreman of the jury, Germany, given as a witness before the court on the hearing for a motion for a new trial as follows: "The jury was in agreement that the answer to be given to special issue No. 9 was the word 'No.'" We likewise stated that the other jurors who testified at the hearing corroborated the testimony of the foreman.

But the other jurors corroborated the foreman, Germany, also in his testimony to the effect that he put down "No" as an answer to special issue No. 9 because it was his opinion that such answer "reflected the finding of the jury that he (appellant) did not have a hernia prior to the 13th day of July, 1943." The act of the jury in writing down the word "No" to special issue No. 9 after they had found that appellant did not have a hernia prior to the 13th day of July, 1943, when, in fact, the word "No" had the opposite effect to their finding, constitutes the "unanimous mistake in the nature of a clerical error in announcing or transcribing a verdict already arrived at" (quotation from case of Caylat v. Houston, E. & W. T. R. Co., supra [113 Tex. 131, 252 S.W. 482]), for which the Supreme Court says relief should be granted.

Appellee further requests a "finding that any error of the jury was in its misunderstanding of the isuse submitted to it by the court." We think findings on this subject matter have already been made in our original opinion; however, it may be more clearly stated here. A careful analysis of the evidence reveals that the jury cautiously and deliberately answered all the special issues without any haste, confusion or uncertainty; that they clearly understood that the trial court asked them in special issue No. 9 whether or not appellant's hernia existed in any degree before the accident on July 13, 1943; that they unanimously agreed without any confusion or dissension that he did not have a hernia in any degree before July 13, 1943, and they thought the word "No" would clearly report their finding to that effect to special issue No. 9, but they later learned soon after they were discharged that the word "No" had the opposite meaning and the jury therefore made "a unanimous mistake in the nature of a clerical error in announcing or transcribing a verdict already arrived at" (quotation from Caylat case), for which the Supreme Court says relief should be granted. The negative form of the question propounded in special issue No. 9 misled the jury as to whether a negative or an affirmative answer would correctly announce the finding they had made, but a careful examination of all the testimony reveals that they understood the nature and meaning of the question propounded by the court and the facts as a whole do not justify a finding such as appellee seeks to have us make. Excerpts picked out from the testimony here and there of some of the jurors on cross-examination may have a tendency to lend some comfort to appellee's contention that it was "an

error in the mental processes by which the jurors arrived at the answer" to special issue No. 9, but a careful analysis of all the testimony of each juror as a witness conclusively establishes a unanimous mistake by the jury in the nature of a clerical error only in transcribing and announcing its verdict already arrived at by the jury in answering the said special issue. The facts in the instant case are parallel to the facts in the Caylat case and the same rule should prevail; however, in the Caylat case only affidavits of the jurors in support of the claim of a unanimous mistake were introduced in evidence, while appellant produced all the jurors that could be found to testify before the trial court in the instant case, and each juror was carefully cross-examined. The testimony of the jurors support the findings made by us in the original opinion and here reiterated.

Appellee's motion for a rehearing is overruled.