JOHN B. PETERS v. JOHN D. FOGARTY.

1. An application to amend a *postea* should be made to the trial judge, and the court *in banc* should not entertain such a motion unless the matter is referred to the court by the judge.

2. When an application is made to amend a *postea*, on the ground that it does not correctly state the verdict actually delivered by the jury in open court, the testimony of the jurors is admissible to show what verdict they did deliver.

3. The testimony of jurors is admissible to prove that, by mere inadvertence, their foreman misstated in open court the verdict upon which they had agreed, and if the mistake be indubitably established, it will be corrected.

In tort. On rule to show cause why a new trial should not be granted.

Argued at February Term, 1893, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the plaintiff, *Isaac W. Carmichael.*

For the defendant, *Edmund Wilson.*

The opinion of the court was delivered by

DIXON, J.   An action of tort for false imprisonment, brought in this court by John B. Peters against The Society for the Prevention of Cruelty to Animals and John D.

Fogarty, was tried in the Ocean Circuit, and there, the inno- cence of the corporate defendant being conceded, the evidence was submitted to the jury on the issue between the plaintiff and Fogarty. The jury returned a verdict which was under- stood by the presiding justice to be in favor of Fogarty, and was so entered, and subsequently he signed a *postea* to that effect. Within an hour after being discharged, the jury, having learned how their verdict had been recorded, informed the justice that a mistake had been made, and shortly after- wards, on affidavits being presented to the justice, he allowed a rule requiring Fogarty to show cause before this court why the verdict in his favor should not be set aside and a new trial granted, and giving the parties leave to take proofs. This rule, with the testimony taken under it, is now before us for decision.

The testimony consists mainly of the depositions of the jurors with regard to what transpired at the rendition of their verdict. These depositions are objected to by the defendant, on the ground that jurors are not competent witnesses to impeach their own verdict.

Said Chief Justice Bigelow, in *Capen* v. *Stoughton*, 16 *Gray* 364: "It has been settled upon sound considerations of public policy that mistake of the testimony, misapprehension of the law, error in computation, irregular or illegal methods of arriving at damages, unsound reasons or improper motives, misconduct during the trial or in the jury-room, cannot be shown by the evidence of the jurors themselves, as the ground of disturbing a verdict duly rendered." Nor will their affi- davits be received for the purpose of showing what they understood or intended their verdict to mean. *Jackson* v. *Williamson*, 2 *T. R.* 281.

These principles have been frequently acted upon in this state. *Hutchinson* v. *Consumers' Coal Co.*, 7 *Vroom* 24, and cases cited; *Lindauer* v. *Teeter*, 12 *Id.* 255. Many instances of their application in England and in several American states are referred to with characteristic thoroughness by Mr.

Justice Gray in *Woodward* v. *Leavitt*, 107 *Mass.* 453. See, also, *Mattox* v. *United States*, 146 *U. S.* 140.

The object, however, of the present affidavits does not conflict with these rules. That object is—*first*, to show what verdict was actually rendered in the hearing and apprehension of the jury ; and, *second*, to show that, if the foreman announced a verdict for the defendant, it was by mere mistake and inadvertence, the jury having agreed upon a verdict for the plaintiff. For such purposes the affidavits of jurors are admissible. In *Cogan* v. *Ebden*, 1 *Burr*. 383, they were received by the King's Bench, Lord Mansfield presiding, to prove that, although a general verdict for the defendant had been given in by the foreman, the verdict really agreed upon was for the defendant upon one issue and for the plaintiff upon another. In *Jackson* v. *Dickenson*, 15 *Johns*. 309, the depositions of jurors were admitted to establish that a mistake had been made by the clerk or the judge in taking and entering their verdict. In *Capen* v. *Stoughton, ubi supra,* the jury had delivered a written verdict for the respondents, which was recorded. Subsequently three of the jurors testified, against the objection of the respondents, that the jury had agreed on a verdict for the petitioners and filled up a blank form accordingly, but then by mistake had signed the form of verdict for the respondents and returned it into court. On exception taken, the Supreme Judicial Court held the testimony competent, saying : "The evidence of the jurors is offered only to show a mistake, in the nature of a clerical error, which happened after the deliberations of the jury had ceased and they had actually agreed on their verdict. * * * No considerations of public policy require that the uncontradicted testimony of jurors to establish an error of this nature should be excluded. Its admission does not in any degree infringe on the sanctity with which the law surrounds the deliberations of juries, or expose their verdicts to be set aside through improper influences, or upon grounds which might prove dangerous to the purity and steadiness of the administration of public justice. On the contrary, it is a case

of manifest mistake of a merely formal or clerical character, which the court ought to interfere to correct, in order to prevent the rights of parties from being sacrificed by a blind adherence to a rule of evidence, in itself highly salutary and reasonable, but which, upon principle, has no application to the present case."

If, therefore, it be proper that we should look beyond the *postea* to ascertain the verdict of the jury, the depositions of the jurors are as competent as those of other witnesses.

The mere fact that the trial judge has signed a *postea* does not preclude inquiry into its truth. If wrong it may be corrected. 1 *Arch. Prac.* 453. In *Doe* v. *Perkins,* 3 *T. R.* 749, the court said that the practice of amending the *postea* was as ancient as the time of Charles I., and that the amendment might be made at any time, even after joinder in error assigned upon the judgment.

But the more modern English cases quite uniformly hold that the correction can be made only through application to the judge who tried the cause, and that the court *in banc* will not interfere unless the matter is referred to them by the judge. *Scougull* v. *Campbell,* 1 *Chit.* 283 ; *Allerton* v. *Stockdale,* 2 *Jur.* 306 ; *Newton* v. *Harland,* 1 *Man. & G.* 958 ; *Sandford* v. *Alcock,* 10 *Mees. & W.* 689. Our practice has been, perhaps, not so strict. In *Ferguson* ads. *State,* 2 *Vroom* 283, Justice Haines said : "The right to amend a *postea* is unquestionable. It may be corrected by the judge's notes or by the entries or memoranda of the clerk of the Circuit, or by other evidence." In that case this court considered and decided for itself whether the *postea* corresponded in substance with the actual finding of the jury. In *Gerhab* v. *White,* 11 *Vroom* 242, where the *postea* stated a verdict perfectly legal in form, this court held that it was not warranted by the verdict which the jury had actually delivered, and because the real verdict was ambiguous a new trial was ordered.

If the personal knowledge of the judge were always the basis upon which the statements in the *postea* rested, the English rule would certainly be commendable, for his obser-

vation of what takes place officially before him is most likely to be exact, and if doubt respecting it cannot be engendered in his mind it is because doubt should not be entertained; but with us verdicts may be, and often are, received by the clerk, in the absence of the judge, and this fact may justify a rule giving greater freedom of inquiry by the court itself. When the question relates to a mere mistake of the foreman in announcing the verdict, the trial judge has scarcely better opportunities of arriving at the truth than the court *in banc*.

The present case is within the spirit at least of the English rule. The trial judge, when applied to by the plaintiff on the ground of mistake, did not proceed, as he might have done, to ascertain whether he had misunderstood the verdict actually rendered, nor did he consider whether the foreman had inadvertently used the wrong word in declaring the verdict; but he referred the whole matter to the court by granting a rule returnable here, with such proofs as the parties might produce.

With regard to the questions of fact, there is no doubt that if the foreman pronounced a verdict for the defendant he blundered. Every one of the twelve jurymen swears that the verdict which the jury had agreed upon was in favor of the plaintiff.

Eleven of the jurors also testify that the first answer of the foreman to the clerk's question as to their verdict was that they found Fogarty guilty; the twelfth juror did not hear the answer. This response of the foreman was not heard by the judge or clerk, and thereupon a colloquy arose between one of them and the foreman in which the foreman and two other jurors say he again announced the verdict as being against Fogarty, while three other jurors say he declared it to be for Fogarty; the other six jurors did not understand the second announcement. The bystanders who have been examined are equally variant in their impressions of what was said.

Upon this testimony it is quite clear that the defendant is not entitled to judgment upon the *postea*. If the verdict agreed upon by the jury had been complete, we might have amended the *postea* and rendered judgment for the plaintiff;

but it is incomplete, since no damages were assessed, the jury saying that they thought the damages were to be fixed by the judge.

A new trial is awarded.

It may be proper to remark that if this rule had been designed merely to correct the *postea*, it should have been argued in the branch court, but as the correction of the *postea* is only subsidiary to the obtaining of a new trial, the matter is regularly before the main court.