## PELZER MANUF'G CO. v. HAMBURG–BREMEN FIRE INS. CO.

(Circuit Court, D. South Carolina. January 4, 1896.)

1. JURY—CORRECTING VERDICT—TESTIMONY OF JURORS.

The testimony of jurors to impeach or correct their verdict may be received when the object sought is, not to show any error or misconduct in the consultations of the jury, or in the mode in which the verdict was made up, but only to show a mistake, in the nature of a clerical error, in announcing or making the record of the verdict actually agreed upon.

2. EQUITY—MISTAKE—CORRECTING JUDGMENT AT LAW.

The P. Co. owned a quantity of cotton, on storage with C. Bros., who, under the terms of their contract, were insurers, and, to protect themselves, had taken out several policies of insurance, including two in the H. Ins. Co. for $2,500 and $5,500, respectively. The cotton was burned, and C. Bros. assigned the policies to the P. Co., which brought suit in a state court on them against the several insurance companies, including the H. Co. Eight such cases came on for trial at one term of the court. Two of them were fully tried, and the jury found verdicts for the P. Co. The remaining six cases were then submitted to the same jury, including that against the H. Co., in which the two policies were set out in separate causes of action. The jury found a verdict for the plaintiff in each case, but in that against the H. Co., only for $5,500, the amount of one policy. The error was not noticed, and judgments were entered on all the verdicts, from which appeals were taken and heard, the judgments affirmed, and afterwards paid and satisfied; and suit was begun, and judgment obtained against C. Bros. for the excess in value of the cotton over the policies,—all before the error in the verdict against the H. Ins. Co. was discovered. As soon as it was discovered, being about two years after the verdict was rendered, the P. Co. brought a suit, which was removed to the United States circuit court, to obtain relief on the ground of mistake, and showed, by the evidence of the jurors, that the jury had agreed upon a verdict for the P. Co. for its full claim, but that, by mistake, the verdict had been wrongly recorded by the juror who was deputed to write it out. The time within which, under the state practice, the plaintiff could either move for a new trial or apply to correct an error due to his own excusable neglect had expired. *Held*, that plaintiff neither had had such an adequate remedy at law nor had been guilty of such laches or negligence as to deprive him of the right to relief against the mistake,

and that the court would afford him a remedy by decreeing the payment of the amount of the omitted policy.

**3.** JUDGMENTS—CONCLUSIVENESS—DEFENSES.

*Held,* further, that a defense, based upon a claim that the plaintiff had been paid more than it was entitled to under the policies, which had been set up and overruled in the action on the policies, could not be entertained in the suit to reform the judgment.

**4.** LIMITATIONS—BY CONTRACT—INSURANCE POLICY.

*Held,* further, that a limitation of the time for bringing suit on the policies, contained in such policies, had no application to the suit to reform the judgment.

This was a suit, originally commenced in a court of the state of South Carolina, by the Pelzer Manufacturing Company against the Hamburg-Bremen Fire Insurance Company, to reform a judgment. A motion to remand was denied (62 Fed. 1), and a demurrer to the bill was overruled. The cause was now heard on the pleadings and proofs.

Smythe & Lee and Haynsworth & Parker, for complainant.

J. H. Heyward, for defendant.

SIMONTON, Circuit Judge. The case now comes up for final hearing on bill and answer, with the testimony. It is a cause of unusual character. Generally, when judgments at law are brought before this court, the defendant is the complainant, seeking to be relieved therefrom on some ground of equity. In the present case, the plaintiff at law seeks reformation of the judgment, or relief against injustice done to it by the judgment. The complainant was the owner of a large quantity of cotton in bales, stored in the warehouse of Cely Bros., at Greenville, S. C. The contract between the complainant and Cely Bros. made the latter insurers of the cotton, and to protect themselves Cely Bros. took out a number of policies of insurance in various insurance companies. Among these was the defendant in this case, in which Cely Bros. had two policies of insurance on this cotton,—one for $5,500, the other for $2,500. The cotton was insured in bulk in each of the companies, the risk of each company being measured by its policy. A fire occurred, and the cotton was entirely consumed. Cely Bros. assigned all their policies to the complainant. After some fruitless negotiations between the insurance companies and the complainant, suits were brought on all or nearly all the policies against the several insurance companies in the court of common pleas for Greenville county, S. C. The complaint against this defendant contained two causes of action. The first cause of action set out the smaller policy, that for $2,500. The second cause of action set out the larger policy, that for $5,500. The answer of the defendant, after admitting the corporate character of the plaintiff and defendant, denied every other allegation not thereafter admitted or explained. It then requires proof of the assignment by Cely Bros., and sets up, as a defense, that in the policy of insurance, which was partly in print and partly in writing, one of the conditions was that any omission to make known a material fact

concerning the risk would vitiate the policy, and that Cely Bros. did omit a material fact, namely, that their warehouse was on land leased to them by the Greenville & Columbia Railroad Company; that they had released that company from all loss or damage by, fire communicated from its locomotives to this cotton; that the cotton, with the warehouse in which it was stored, were burned by fire so communicated; and that defendant lost or was greatly embarrassed in seeking the equity of subrogation, which, but for the release by Cely Bros., it would have had against the railroad company. In this defense is involved the admission that there was a total loss, as averred in the complaint. For another defense the defendant set up the fact that the property was on leased land, without having been described as such, and this omission avoided the policy. Eight of these cases against the insurance companies came on to be tried at a term of the aforesaid court. Each case presented substantially these issues, with perhaps one or more peculiar to itself. Two of the cases were tried, and, after a ruling by the presiding judge and his charge to the jury, they found a full verdict on each policy for the plaintiff. There was no dispute as to the fact of total loss. All the other cases, six in number, were then submitted to the same jury at the same time by the same judge. Among these was the case involving the two policies of the defendant. In every case the jury found for the plaintiff. In every other case but this the jury found a full verdict. In the case against this defendant they found a verdict which covers the amount due on the large policy, but not including the amount due on the smaller policy. The verdicts were rendered 26th March, 1891, and all the jurors at once discharged. The court adjourned sine die 28th March, 1891. Notice of intention to appeal was given by defendant 7th April, 1891. Judgment was entered 14th April, 1891, and a second notice of intention to appeal was served 20th April, 1891. The exceptions and grounds of appeal raise various questions. One only relates to the amount of the verdict: "(7) That the verdict of the jury in each case was in excess of the amount called for by the terms of the policy." The supreme court affirmed the judgments below. The cases were remitted, taxation of costs made, amount of the judgment paid, and the judgment satisfied on the record. Suit was then commenced by the complainant against Cely Bros. for the difference between the value of the cotton destroyed and the aggregate of the policies, and judgment was obtained against them, on which execution was issued. Negotiations having been entered into for a settlement and compromise of this case, it was for the first time discovered that the verdict against this defendant was the amount of one policy only. Thereupon the matter with Cely Bros. was adjusted by payment of a certain amount of money and a transfer of all interest in this policy of the defendant company on which verdict was not taken. The discovery of this mistake was in the early part of 1894. This mistake having been discovered, the complainant filed the present bill, seeking relief from it. To this bill defendant demurred.

The gist of the bill, and the fact upon which it asked relief, was that the jury, with the full purpose and intention to find a verdict

upon both policies set out in the complaint, inadvertently and by mistake brought in their verdict upon one policy only; that this mistake was unintentional, and through inadvertence on the part of the jury, and was not known to the complainant until nearly two years after verdict was rendered; and immediately upon its discovery this suit was brought. The demurrer admitted these material facts. Upon this admission the jurisdiction of the court was sustained, and the demurrer overruled. "There has always existed in the courts of equity," says the supreme court in Johnson v. Towsley, 13 Wall. 84, "in a certain class of cases, the power to inquire into and correct mistakes, injustices, and wrong in both judicial and executive action, however solemn the form which the result of that action may assume, when it invades private rights; and by virtue of this power the final judgments of courts of law have been annulled or modified, and patents and other important instruments issuing from the crown or other executive branch of the government have been corrected or declared void, or other relief granted."

The demurrer having been overruled, the defendant answered over. It denies any knowledge of any mistake in the verdict of the jury, and denies that any mistake was made; that, if a mistake was in fact made, complainant and its attorneys had repeated and ample opportunity of correcting it in the court in which the cause was tried, and until this suit was brought have made no attempt of any kind to correct it; that the president of the plaintiff corporation, with their "eminent" counsel, were present when the verdict was read out by the clerk, in presence of the court and jury; that subsequently, with all the papers before them, they entered up judgment on the verdict; that the court was in session several days after the rendition of the verdict, and thus full opportunity was afforded for correction; that an appeal was taken to the supreme court, and the judgment affirmed, and that plaintiff again had opportunity of examining the record, and calculating interest on the judgment, when it received full satisfaction thereof; that the same opportunity was afforded in preparing, bringing, and conducting suit against Ocly Bros. for the unsecured excess of loss. Another line of defense is set up in the answer. The policies of this company and of all the other companies sued at this time had, in each of them, an average clause, apportioning the loss in case the aggregate of amounts of insurance exceeded the amount of loss lawfully paid, and it was charged that this condition of things existed here. Yet another line of defense: The contract limitation in the policy of right of action to the period of 12 months. It will be noted that the facts admitted by demurrer, pro hac vice, are now denied in the answer. So, the question of jurisdiction having already been adjudicated, the other grave questions are open for decision. The questions in this case are not complicated by any intervening considerations. The mistake, if any existed, has occasioned no change in the relative positions of the parties. The defendant has done no act, has omitted no act, and is not in any sense the worse for the mistake, if any such existed.

The first question in the case is, did any mistake exist? Was the verdict rendered by the jury an unintentional act or omission on their part? This jury had before them six cases, involving substantially the same issue, liability of the insurance companies under their respective policies,—a liability denied on two grounds: Violation of the conditions in the policy, which went to the whole amount claimed; and an average clause applicable to all alike, which went to the amount of liability on each policy. In five of the cases the jury found the full amount claimed. They omitted one policy in the present case, to which there was precisely the same defense as to the other. It would appear strongly probable that there was some mistake here. But this would scarcely be sufficient to justify the modification of a thing so solemn as a judgment at law, based on the verdict of a jury. Further inquiry must be made, and this brings up a grave question. The only direct evidence of a mistake is sought from the persons composing the jury. Is such evidence admissible? It is evident that there is no fixed rule excluding the evidence of jurors as to their verdict. The supreme court of the United States, in Mattox v. U. S., 146 U. S. 148, 13 Sup. Ct. 50, say:

"There is, however, a recognized distinction between what may and what may not be established by the testimony of jurors to set aside a verdict."

An examination of the long list of cases and of the text-books bearing on this question show that it is largely a matter of judicial discretion, each case being, in a measure, a law unto itself. None of the cases permit a juror to impeach a verdict because of his own misconduct or that of other jurors in the jury room, or to divulge the motives or the method by which they reached the verdict, or to show that he or they mistook the charge of the judge. Thomp. & M. Jur. § 440; Owen v. Warburton, 4 Bos. & P. 326; 1 Greenl. (by Redf.) Ev. § 252a; Smith v. Culbertson, 9 Rich. Law, 111, in which Wardlaw, J., discusses the question elaborately and ably; State v. Bennett, 40 S. C. 310, 18 S. E. 886. In Capen v. Stoughton, 16 Gray, 366, Chief Justice Bigelow, for the supreme court of Massachusetts, gives the rule:

"It has been settled, upon sound considerations of public policy, that mistake of the testimony, misapprehension of the law, error in computation, irregular or illegal methods of arriving at damages, unsound reasons or improper motives, misconduct during the trial or in the jury room, cannot be shown by the evidence of the jurors themselves as the ground of disturbing a verdict duly rendered. * * * In all those cases [those establishing this rule] it will be found, upon examination, that an inquiry was attempted into the conduct of jurors during the progress of the trial, * * * or in making up the verdict to which they finally agreed. But in the present case the mistake which is proved by the testimony of the jurors is of a different character. It is not one connected with the consultations of the jury or the mode in which the verdict was arrived at or made up. No fact or circumstance is offered to be proved which occurred prior to the determination of the case by the jury and their final agreement on the verdict which was to be rendered by them. But the evidence of the jurors is offered only to show a mistake, in the nature of a clerical error, which happened after the deliberations of the jury had ceased and they had actually agreed on their verdict. The error consisted not in making up the verdict on wrong principles, or on a mistake of facts, but in

an omission to state correctly, in writing, the verdict to which they had, by a due and regular course of proceedings, honestly and fairly arrived. * * * No considerations of public policy require that the uncontradicted testimony of jurors to establish an error of this nature should be excluded."

This case is cited and followed by the supreme court of New Jersey in Peters v. Fogarty, 26 Atl. 855. In Woodward v. Leavitt, 107 Mass. 453, a full citation of cases bearing on the general question is made, and the case discussed. The distinction made by Bigelow, C. J., in the case in 16 Gray is recognized. And Jackson v. Dickenson, 15 Johns., at page 317, recognizes and approves the same distinction. In the case of Cohen v. Dubose, Harp. Eq. 102, the court of last resort in South Carolina admitted the testimony of jurors for precisely the same purpose, to show, not how they reached their verdict, but what the verdict really was. The distinction so clearly set forth by Chief Justice Bigelow seems to be sound. The verdict of the jury is the conclusion which they have reached. This conclusion is shown in different ways in different courts. In North Carolina, for instance, the jury come out, and one of their number, designated by them, orally announces their conclusion. The clerk enters this on the minutes. In South Carolina the foreman writes their conclusion on the record. The oral declaration in the one case, and the written statement in the other, are only evidence of the conclusion reached by the jury. This, in certain cases, can be explained. The testimony of some of the jurors who tried the case established the fact that, after deliberating, they all concluded to find for the plaintiff its claim on both policies, and directed the foreman and another juror to prepare the written verdict; that this was done, but that, either through inexperience or inadvertence of the two jurors, the verdict was written only on one cause of action; that, when they returned into court, and all the several verdicts were read, they did not recognize the error, and the mistake was recorded. It is evident that this was a mistake, and one of the character spoken of by Chief Justice Bigelow, reviewable and open to correction. Indeed, this is, in effect, admitted in argument by the learned counsel for defendant. He insists that the plaintiff had an opportunity of amending the verdict at its rendition, or, at least, during the session of the court, and, under the provisions of the Civil Code of South Carolina, within one year after notice of the judgment. So the verdict was not an absolute finality.

This brings us to another question, did the plaintiff have a complete and adequate remedy at law, lost by his own laches or negligence, and so is without remedy in this court? It is well to keep in mind the precise question in this case. The bill is filed to correct a mistake. Whose mistake? Not of the plaintiff or of his attorneys, but of the jury. Perhaps, if counsel, upon rendition of the verdict, had risen and called the attention of the jury to the amount of the verdict, the jury then would have recognized the mistake and have corrected it. But counsel did not prepare the verdict, and the verdict was not rendered against them "through their mistake, inadvertence, surprise, or excusable neglect." It may be questioned if this comes within section 195 of the South Carolina Code. "Such

relief" (under this section) "is only to be given in cases where the judgment has been taken through the party's own mistake, inadvertence, surprise, or excusable neglect, and does not apply to cases where relief may be had upon application to the same tribunal which rendered judgment, under the General Statutes." Garvin v. Garvin, 13 S. C. 160. It is intended for parties who may, through such cause, have lost the opportunity of being present at the trial, or to be represented thereat, and not for parties who, represented at the trial, are only entitled to relief under the provisions of the law therefor. 2 Rev. St. S. C. p. 90, and cases quoted. But the plaintiff, if discontented with the verdict, could have moved for a new trial. He could have done so, but he lost it as soon as the court adjourned. Code S. C. § 289.

In any event, whether he could have proceeded under section 195 of the Code, or under section 287, the complainant is without remedy at law. Has it been guilty of such negligence as will deprive it of any relief in this court? It is not a question of laches, for laches is not, like limitation, a question of time, but principally a question of the inequity of permitting the claim to be enforced, an equity founded upon some change in the condition or relation of the property of the parties. Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873. As has been seen, there has been no change in the condition or property of the defendant which the delay in discovering the mistake could effect. But "vigilantibus non dormientibus lex subvenit." Has the complainant slept on its rights? The evidence shows that the mistake of the jury was not discovered until just before this suit was brought. If the remedy in the law court open to the plaintiff was a motion for a new trial, then it had only two days to avail itself of it. The verdict was on 26th. The court adjourned sine die on 28th. If it had a remedy under section 195, then it had one year from notice of the judgment to correct it. But it must be considered how seldom a mistake like this can occur, and the circumstances under which this occurred must also be taken into account. Two cases, involving substantially the grave issues in all the cases, had been conducted before the judge and jury. We have no evidence here of the character of the discussion. But, from the names of the counsel engaged, and their ability and learning, which are known to all the courts in which they practice,—to none better than this court, which has often felt the great aid they render a judge in coming to his conclusion,—the debate must have been exhaustive and able. When they ended, all sides felt that the argument was exhausted, and six cases were submitted. No special objection was made to any one policy, as distinguished from the others. The objections of the defendant went to the whole liability. The charge of the court, the action of the jury, left no doubt that the plaintiff had been entirely successful in vindicating its claim as for a total loss on each policy. The verdicts were all rendered in the six cases together. The vigilance of counsel was relaxed, and the discrepancy naturally escaped them. The citations of the counsel for defendant, and the long list of authorities which the text-books

cited, show how deeply has been impressed on the minds of the profession the difficulty—one would almost say, the impropriety—of examining into the verdict of a jury.    Usually such verdicts, however startling they may be, are received, if not philosophically, at least submissively, as ending the matter.    Although the complaint contained two causes of action, the verdict was a general verdict for the plaintiff, so that the attention of no one was called to the fact that discrimination was made between the causes of action. Under these circumstances, it cannot be called gross negligence,— the omission of plaintiff or its attorneys to note an unlooked-for discrepancy between the complaint and the verdict.

But, did the plaintiff have a plain, adequate, and complete remedy at law?    Its position is this.    The jury, as the result of their deliberations, found a verdict for the plaintiff,—a full verdict upon both causes of action.    The foreman, in reducing to writing the action and conclusion of the jury, made a mistake.    This mistake was not noticed, either by the court or by counsel for plaintiff itself, and the jury were forthwith discharged of the case and for the term. A court of law, upon the discovery of the mistake, could only relieve by granting a new trial.    The jury having been discharged, the court could not have the verdict amended so as to conform to the proof.    Now, the plaintiff did not desire a new trial, nor would a new trial have met its case, or given it the relief it desired.    It could only get such relief in a court which could affect the conscience of the defendant.    This being so, there is nothing in the subsequent occurrences in this case which would justify the court in treating the bill as a stale claim.    Here we have a clear case of mistake by the jury, through their foreman, and no means of correcting it at law.    Will this court grant the relief?    The question before this court is not whether it will permit the introduction of evidence, or the maintenance of legal positions which the party did not make or was prevented from making in a trial in the law court. Nor is it asked to correct an error in the conclusions reached by the jury, or the conclusion itself reached by irregular or improper methods.    In none of these cases, as is well established by authorities quoted and referred to, supra, would a court of equity interfere. But the court is asked to correct a mistake made in declaring what the real conclusion of the jury was.    The averment is that the jury considered the case and concluded to give the plaintiff a verdict on both causes of action; that, notwithstanding that conclusion, the written evidence of the verdict erroneously stated otherwise, through an unintentional mistake, inadvertently passed over by the jury. The jurisdiction and the right to relief in a case of this character are sustained by Johnson v. Towsley, supra; Cohen v. Dubose, Harp. Eq. 102; Partridge v. Harrow, 99 Am. Dec. 643; Bank v. Minthorne, 19 Johns. 246; and a case quoted by counsel, but not within the reach of the court,—Sidener v. Coons, 83 Ind. 187; also, Black, Judgm. § 367.

The ground taken in the answer, that, under the average clause in these policies, plaintiff has been overpaid, cannot be entertained

in this court. It is based upon the assumption that, in two, at least, of the many cases against the insurance companies, the defense which was set up was good, and should have been sustained; that it would have been sustained in this court; that, notwithstanding a different conclusion reached in the state court, this court will so hold. But a conclusion reached in a court of competent jurisdiction, in a cause between proper parties, is conclusive in all courts everywhere. When a judgment comes into another tribunal the only question is, had the court jurisdiction? If it had, its conclusion, as between the parties to the suit and their privies, is res judicata. It cannot be gainsaid. There is a right to inquire into the jurisdiction of the court, and, above all, they are entitled to know that there was no fraud or collusion or gross neglect in obtaining the judgment. But, when all these are established, this judgment, when duly pleaded and proved in a court of the United States sitting in South Carolina, has the effect, not only of prima facie evidence, but of conclusive proof of the rights thereby adjudicated. A refusal to give it force and effect, in this respect, which it has in the state in which it was rendered, denies to the judgment creditor a right secured to him by the constitution and laws of the United States. Huntington v. Attrill, 146 U. S. 685, 13 Sup. Ct. 224; Central Trust Co. v. Charlotte, C. & A. R. Co., 65 Fed. 262, 263.

It is also contended that the policy of insurance has a clause fixing its own period of limitation of action, and that has long since expired. That limitation is as to an action on the policy, and controls such action. This case, however, proceeds upon the idea that there has been an action on the policy within the stipulated time, that that action resulted in a conclusion and verdict by a jury in favor of the claim under the policy, but that, by mistake and inadvertence on the part of the jury, an improper entry was made. It seeks correction of that mistake, as one affecting the conscience of the defendant. It is a wholly distinct cause of action dehors the policy, and unaffected by any of its provisions.

The remaining question is as to the relief to be granted. As has been said, the case of complaint is this. A case was made, between it and the defendant, putting in issue the liability to it by the defendant on two policies of insurance. That case was tried before a judge and a jury, and all the issues found in favor of the complainant, plaintiff at law. A mistake was made whereby the complainant was deprived of the amount due on one policy, notwithstanding the conclusion of the jury that it should recover thereon. That mistake should be corrected, and the right of complainant established. This position of complainant has been sustained in this court. It applies the remedy. It is ordered that the defendant pay or cause to be paid to the complainant the amount of the policy for $2,500, with interest theron up to the date of the verdict in the case, to which must be added interest on the principal sum from the date of the filing of the bill in this case, and costs. Let an order be prepared carrying out these views.