CHARLES E. CAYLAT V. HOUSTON EAST & WEST TEXAS RAILWAY
COMPANY.

No. 3568.   Decided June 20, 1923.

(254 S. W., 478.)

**1.—Practice—Impeaching Verdict—Clerical Mistake.**

Irrespective of our statute on the subject (Rev. Stats., 2021) evidence was not receivable to impeach the verdict on the ground of misconduct of the jury in arriving at their decision. But by the weight of authority (here reviewed) it was permissible to show that by a clerical mistake in writing it the verdict returned was not such as the jury agreed on and intended to render. (Pp., 136-142).

**2.—Same—Case Stated.**

In support of plaintiff's motion for new trial and for correction of the verdict and judgment thereon in his favor, he presented affidavits of all the jurors that their finding on the special issue submitted to them as to his contributory negligence was against its existence, the verdict as writ-

ten, returned, and assented to by all on poll of the jury, reading, through clerical error, that he was so negligent, and the judgment for defendant being based thereon. *Held* that it was error to sustain a demurrer to that part of his motion and refuse either to correct the verdict or to grant a new trial. (Pp. 136-142).

3.—Same—Verdict—Clerical Error—Correction—New Trial.

Where the verdict on a special issue supporting judgment for defendant, instead of for plaintiff, on the ground of contributory negligence by the latter, was shown by affidavits of all the jurors taken after it was returned and the jury discharged, to have been intended as a finding against, and not in favor of the existence of such contributory negligence, and to have appeared as a contrary finding by a clerical error in writing the verdict, the proper practice was, if the court determined that such clerical error was established, not to correct the verdict accordingly and render judgment for plaintiff, but to award him a new trial. (Pp. 142, 143).

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Harris County.

The Supreme Court, having referred the questions to the Commission of Appeals, Section B, for their opinion thereon, here adopts same as its answers to the questions certified.

*Presley K. Ewing,* for appellant.

The statute as to the misconduct of the jury being inapplicable, since there was no misconduct but only a clerical slip or mistake, and the rule of the common law disallowing impeachment by the jury of their verdict being equally inapplicable, since the relief sought contemplates no impeachment of the verdict actually determined, but giving effect to it by correction of a mere clerical mistake, it is submitted both sound reason and abundant authority entitled the plaintiff to relief as moved in the trial court. Wigmore's Evidence, Vol. 4, Sec. 2355, sub. (2), and numerous cases cited under note 4 of such subdivision; Paul v. Pye (Minn.), 159 N. W., 1070, and cases cited; Wolfgram v. Schoepke, 123 Wis., 19, 100 N. W., 1054; Gillespie v. Ashford, 125 Iowa, 729, 101 N. W., 649; Hodgkins v. Mead, 119 N. Y., 166, 23 N. E., 559, 560-561, and cases cited; Capen v. Stoughton (Mass.), 16 Gray, 364; Pelzer Mfg. Co. v. Hamburg-Bremen Fire Ins. Co., 71 Fed., 826; Hamburg-Bremen Fire Ins. Co. v. Pelzer Mfg. Co., (4th Circuit Court of Appeals), 76 Fed., 479; Peters v. Fogarty (N. J.), 26 Atl., 855; Woodward v. Leavitt, 107 Mass., 453; Jackson v. Dickenson, 15 Johns., 317.

The defendants having elected to rest their attack on an exeception or objection, claiming the relief was not grantable under the law, without any challenge of the truth of the showing made, which is abundantly supported by affidavits in accordance with the prevailing practice in such case, so as to leave no doubt as to the fact of the

mistake, there was no just reason to deprive plaintiff of the verdict as actually rendered for him, so that the relief should have been by correction of the verdict and not by ordering a new trial, as has often been done in other jurisdictions, and which is in accordance with the decided weight of authority.  Same authorities.

Apply any test possible, and no good reason can be assigned in policy or law why the mistake should not be corrected and plaintiff given the benefit of the actual verdict in his favor.  It would not be just to him to take away from him by new trial that verdict, with no vitiating error leading to it.  As said in Dalrymple v. Williams, 63 N. Y., 361, "it would be a reproach upon the administration of justice if a party could lose the benefit of a trial and a verdict in his favor by the mere mistake of the foreman of the jury in reporting to the court the result of the deliberations of himself and his fellows." The weight of authority so determines, as shown by the cases we have cited and reviewed; indeed, upon close analysis of those thought to oppose, there is in fact no opposition from most of them, the distinction not having been determined.  Thus in Cogan v. Ebden, 1 Burrows, 383; Peters v. Fogarty, 55 N. J. Law, 386, 26 Atl., 855; Dalrymple v. Williams, 63 N. Y., 361, 20 Am. Rep., 544; Hodgkins v. Mead, 119 N. Y., 166, 23 N. E., 559; Capen v. Stoughton, 16 Gray, 364; Gillespie v. Ashford (Iowa), 101 N. W., 649, 652-53; Parker v. Thornton, 21 Vin. Abr., 484; Baker v. Miles, Cooke, 66 (98); and Pelzer Mfg. Co. v. Hamburg-Bremen Fire Ins. Co. (U. S. App.), 71 Fed., 826, 76 Fed., 479, and perhaps in other cases indirectly cited, to which we have not had access, the mistake was corrected, and judgment given on the verdict as actually rendered.  In most of them, the relief was on affidavits of the jurors; for example, such was the basis of the relief in Hodgkins v. Mead, 119 N. Y., 166, 23 N. E., 559, 560-61; in Dalrymple v. Williams, 63 N. Y., 361; in Cogan v. Ebden, 1 Burrows, 383; in Peters v. Fogarty, 55 N. J. Law, 386, 26 Atl., 855; and in Parker v. Thornton, 21 Vin. Abr. 484; Baker v. Miles, Cooke, 66 (98).  In the other cases, supra, Gillespie v. Ashford, Capen v. Stoughton, and Pelzer Mfg. Co. v. Ins. Co., the court in correcting the mistake and granting judgment, heard oral evidence.

*Baker, Botts, Parker & Garwood,* and *McManus, Garrison & Pollard,* for appellee.

Whatever may be the rule in other jurisdictions, it is the settled rule in this State that the affidavits of jurors will not be received to impeach the verdict rendered by them except where the jury has been guilty of misconduct in receiving communications, or other testimony than that admitted at the trial, as provided by statute; hence there

was no error in the refusal of the court to enter judgment for the plaintiff upon the affidavits of the jurymen, presented on the motion for a new trial, or in refusing to grant the motion. Railway Co. v. Ricketts, 96 Texas, 71; Crosby v. Stevens, 184 S. W., 712; Hermann v. Schroeder, 175 S. W., 788; Salinas v. Stillman, 25 Texas, 13; Farrand v. Railway Co., 205 S. W., 848; McGrew v. Norris, 140 S. W., 1143; Ellerd v. Ferguson, 218 S. W., 606; McIntosh v. Railway Co., 192 S. W., 285; Hughes-Buie Co. v. Vasquez, 202 S. W., 525; Campbell v. Skidmore, 1 Texas, 476; Mason v. Russell's Heirs, 1 Texas, 721; Wills Point Bank v. Bates, 10 S. W., 351; Haley v. Cusenbary, 30 S. W., 587; Wood v. Railway, 40 S. W., 25.

MR. PRESIDING JUDGE McLENDON delivered the opinion of the Commission of Appeals, Section B.

The appellant Charles E. Caylat, while traveling in an automobile driven by A. B. Kelly was seriously injured as the result of a collision with one of appellees' engines at a public crossing; and brought this suit to recover compensatory damages for his injuries. The cause was submitted to a jury upon special issues, who found appellees guilty of various acts of negligence proximately causing the accident, and assessed plaintiff's damages at $17,000.00. One of the defenses urged by appellees was contributory negligence of plaintiff in the particulars set forth in special issue No. 13 reading as follows:

"Would, or would not, the plaintiff, Charles E. Caylat, by the exercise of such care as an ordinarily prudent person would have exercised under the same or similar circumstances, have discovered, seen or heard the approach of the engine to the crossing, in time to have notified the driver of the automobile, A. B. Kelly, so as to have stopped the automobile before it reached the crossing, and thus have prevented the accident?

"If under all the attendant circumstances you find that plaintiff failed on the occasion in question to exercise ordinary care in the particulars as submitted in the above issue, then answer the issue 'He would.'

"If, under all the attendant circumstances, you do not find that he failed on the occasion in question to exercise ordinary care in the particulars as submitted as an ordinarily prudent person would have exercised under the same or similar circumstances, then answer the issue, 'He would not.' "

The jury answered this issue "He would."

The verdict was returned on January 23, 1920; the jury were polled, the questions and answers being read in open court in their presence, and each juror gave his assent to the verdict. The verdict was then received and filed, the jury discharged, and judgment was entered for appellees.

Plaintiff seasonably filed a motion for new trial, which was amended on February 3, 1920. The amended motion, among other things, complained of the verdict on the ground that the jury had unanimously agreed upon their answer to the 13th special issue to the effect that such answer should be "He would not", but that by mistake or clerical slip of the foreman, which was overlooked by the jurors when the verdict was returned into court, and not discovered until after they were discharged, the answer was written "He would." This mistake was not known to plaintiff or his counsel until after the jury had been discharged. This ground of the amended motion was supported by affidavits of all twelve jurors. These affidavits are all to the same effect and in practically the same language. We quote from one of them:

"That the jury, in passing on the special issue No. 13, talked over and threshed out the evidence on this question, and discussed it backwards and forwards, to the entire satisfaction of the jury, and having done so, they, the jury, unanimously reached the conclusion, and in fact found and agreed, that the plaintiff, Charles E. Caylat, had not been guilty on the occasion in question, of any negligence or contributory negligence, and that he was, as submitted in the question, in the exercise of such care as an ordinarily prudent person would have exercised under the same or similar circumstances, in not discovering the approach of the engine in time to have notified Kelly as submitted in the question, so that he could have stopped the automobile and prevented the accident, and that an ordinarily prudent person, under the circumstances, would have acted as Caylat did.

"That, having so concluded and found, and unanimously agreed, the jury left it to the foreman to write their answer so finding under the above special issue, and they understood the answer as returned, being 'He would,' to be the finding they had made in favor of the plaintiff on the issue as above stated.

"That the answer returned, 'He would', was written by mistake, and was the result of confusion and misunderstanding.

"That the above mistake was not discovered by affiant when the verdict was returned into court and received and was only discovered after the discharge of the jury, and when told that the answer as returned to the above issue 13 was a finding that Caylat had not exercised ordinary care, instead of a finding that he had exercised ordinary care, which latter the jury in fact found."

On the basis of the showing of the amended motion plaintiff moved for judgment in his favor, contending that the affidavits of the jurors conclusively established that their verdict upon the issue of plaintiff's negligence was in fact in his favor, but by mistake was returned to the opposite of the finding.

"Afterwards, towit, on the 21st day of February, A. D. 1920, said amended motion for new trial came on to be heard, when the

attorney for the defendants asked leave, which was granted, to interpose to the fourth ground of said motion relating to such alleged mistake, a general exception, which was by the court sustained, and no other or further answer thereto was made or filed; and the jurymen were not assembled or orally examined touching the matter of such alleged mistake, and no evidence other than the affidavits of the jurors attached to said motion and made a part thereof, was offered or adduced on the hearing of such amended motion; which motion, after argument of counsel for the plaintiff, the court overruled.''

The Court of Civil Appeals has certified the following questions:

''First: Did the trial court err in sustaining the general demurrer to the motion for new trial?

''Second: If the above question is answered in the affirmative, we ask: Upon the showing made by the motion and attached exhibits, should the verdict be corrected, or should a new trial be ordered?''

In 1905 the legislature passed a statute which has since been embodied in the Codification of 1911 as Art. 2021, reading as follows:

''Where the ground of the motion is misconduct of the jury or of the officer in charge of same, or because of any communication made to the jury, or because the jury received other testimony, the court shall hear evidence thereof; and it shall be competent to prove such facts by the jurors or others, by examination in open court; and, if the misconduct proven, or the testimony received, or the communication made, be material, a new trial may, in the discretion of the court, be granted.''

Prior to the enactment of this statute the general rule in this State relative to receiving the affidavits of jurors for the purpose of ''impeaching their verdicts'' is summarized in the following quotation from the case of Little v. Birdwell, 21 Texas, 597, 73 Am. Dec., 242.

''The generally received doctrine is that the affidavits of jurors shall not be received to impeach their verdict. And for the obvious reason that it would open a door for tampering with jurors, and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under the sanction of an oath. The subject was very fully examined in the case of The State v. Freeman, 5 Conn., 384, and after reviewing the authorities, the court concluded that 'almost the whole legal world is adverse to the reception of the testimony in question' (that of the jurors who tried the case), 'and on invincible foundations.' In Graham & Waterman on New Trials it is said, 'It is admitted, notwithstanding a few adjudications to the contrary, that it is now well settled, both in England, and, with the exception of Tennessee, perhaps in every state of this confederacy, that such affidavits cannot be received, and we believe upon correct reasoning.' 3 Gr. & Wat. New Trials, 1429. The numerous cases there collected and reviewed con-

firm the observation.  In Tennessee, where the affidavits of jurors are admitted to impeach their verdict; it is said they must be received with great caution.  4 Humph. 516.  In Ohio, it is said, they are not in general admissible for that purpose, and can only be received under certain circumstances, where a foundation has been first laid by other evidence.  Farrer v. The State, 2 Ward, (Ohio) 54.  The better opinion is that they ought not in general to be admitted to impeach the verdict, and, if received at all for that purpose, it ought only to be under special circumstances.  The course of decision in this court has been decidedly to discountenance applications for new trials, founded on the affidavits of jurors; and the consequence is that few cases of this kind have occurred in our practice.  Kilgore v. Jordan, 17 Texas, 341; 1 id., 726; id., 475.''

This rule has been recognized in Texas from the earliest times and has never been departed from.  Some of the more important Supreme Court cases in which the rule has been applied are the following: Mason v. Russel's Heirs, 1 Texas, 721; Handley v. Lee, 8 Texas, 129; Davis v. State, 43 Texas, 191; Bank v. Bates, 72 Texas, 142; Ry. v. Gordon, 72 Texas, 51, 11 S. W., 1033; Lutcher v. Morrison, 79 Texas, 241, 14 S. W., 1010; St. Louis S. W. Ry. Co. v. Ricketts, 96 Texas, 71, 70 S. W., 315.

It seems to be generally conceded that this rule may be directly traced to the case of Vaise v. Delaval, 1 T. R., 11 K. D., in which the affidavits of two jurors to the effect that the verdict was arrived at by chance were rejected.  The opinion in that case was delivered by Lord Chief Justice Mansfield and is rested upon the maxim that a witness shall not be heard to allege his own turpitude. Prior to Lord Mansfield's time the unquestioned practice had been to receive jurors' testimony or affidavits without scruple.  Wigmore on Evidence, Vol. 4, Sec. 2352.  The earlier English decisions are collated in a note to the case of Little v. Larrabee, 2 Maine, 38, 11 Am. Dec., 43.  It is stated in this note that the course formerly was to admit the affidavits and that during that period there were only two decisions known to the contrary, which are there cited; but:

''The old practice was first broken in upon by Ld. Mansfield in Vaise v. Delaval, 1 D. & E., 11 A. D. 1785, and it is now settled in England that the testimony of jurors to the misbehavior of the jury in the finding of their verdict is not to be received.  Jackson v. Williamson, 2 D. & E., 281.  Owen v. Warburton, 4 B. & P., 326. Rex v. Wooler, 2 Starkie, 111.  And the usage in the American courts accords with the later English decisions.''

The rule announced by Lord Mansfield has received serious criticism by eminent jurists and text writers, among the latter, Mr. Wigmore; but it has steadfastly maintained its hold upon the courts, English and American, and with the exception of Tennessee and of

some modification, in Iowa, it appears to be now the settled doctrine of every American jurisdiction except where modified by statute.

In addition to the basis announced by Lord Mansfield various considerations of public policy have been subsequently given by the courts as grounds for adhering to the rule.

Art. 2021 above quoted had for its clear purpose the modification of that rule. It manifestly applies only to cases of misconduct of the jury; and we think there can be no question but that it should be limited to that character of objection to the verdict. We think in other respects the common law has not been modified or changed.

If the ground of the motion for new trial in the present case could be held to constitute misconduct of the jury, then clearly the statute would apply; and manifestly it would have been error on the part of the trial court to sustain the demurrer to this ground of the motion. It has been held in several cases by the Courts of Civil Appeals that under the express language of this statute the affidavits of jurors cannot be received for any purpose to show misconduct, but that the evidence in support of the motion, including that of the jurors, must be had in open court.

In the view we take of the case it is not necessary for us to express an opinion upon this particular question.

The great weight of authority, both in this country and in England, is to the effect that a unanimous mistake of the jury, in the nature of a clerical error, in writing or reporting their verdict, already arrived at,—as contradistinguished from an act constituting misconduct or fraud on the part of the jury, or a mistake of fact or law arising in their deliberations, as for example their misinterpretation of the evidence or the charge of the court, or of the legal effect of their verdict—is not misconduct of the jury; does not come within the rule above announced; and may be shown by the affidavits of the jurors themselves; and where the evidence is conclusive that such mistake was made, relief may be granted. Capen v. Stoughton, (Mass.) 16 Gray, 364; Bridgewater v. Plymouth, 97 Mass., 382; Woodward v. Leavitt, 107 Mass., 453, 9 Am. Rep., 49; Karrick v. Wetmore, 210 Mass., 578, 97 N. E., 92; Randall v. Peerless Co., 212 Mass., 352, 99 N. E.. 221; Cooper v. Bissell, (N. Y.) 15 John., 318; Dalrymple v. Williams, 63 N. Y., 361, 20 Am. Rep., 544; Hodgkins v. Mead, 119 N. Y., 166, 23 N. E., 959; Gillespie v. Ashford, 125 Iowa, 729, 101 N. W., 649; Wolfgram v. Schoepke, 123 Wis., 19, 3 Ann. Cas., 398, 100 N. W., 1054; Prussel v. Kunoles, (Miss.) 4 How., 90; Peters v. Fogarty, 55 N. J. L., 386, 26 Atl., 855; Cohen v. Dubose, (S. C.) Harp. Eq., 102; Little v. Larrabee, 2 Greene, (Me.). 37, 11 Am. Dec., 43; Weston v. Gilmore, 63 Me., 493; Paul v. Pye, 135 Minn., 13, Ann. Cas. 1918E, 226, 159 N. W., 1070· Pelzer Mfg. Co. v. Hamburg-Bremen F. Ins. Co., 71 Fed., 826, 76 Fed., 479, 22 C.

C. A., 223; Cogan v. Ebden (Eng.) 1 B. R., 382; Roberts v. Hughes, 7 M. & W., 398.

It may be noted that this very principle was applied by Lord Mansfield himself in Cogan v. Ebden, above.

The result of the holdings upon this subject is thus summarized by Mr. Wigmore:

"But where the error at the time of announcement of the verdict is a *unanimous one,* by all the jury, the situation is a different one. When the verdict as announced or delivered is different unanimously from the verdict as assented to in the jury-room at the time of voting, the case is the same as that of a deed which by mutual or common mistake does not conform to the original agreement as avowedly made by the parties to the deed. Just as such a deed may be reformed in equity, upon satisfactory proof of the error, so such a verdict may be corrected to represent the verdict actually agreed upon by the jury as a whole. The same reasons of policy here also permit a departure from the general rule that formal acts of assent are conclusive; for a unanimous or mutual error can safely be inquired into and easily established, while an individual error opens a wide door for vacillation and uncertainty. As individuals, they must be judged by their open acts; but as an entire jury they may be trusted to correct that which is merely an error in the transmission of their act from the jury-room to the court-room."

This particular question seems to have arisen quite frequently in Massachusetts, whose reports contain a long line of decisions holding and adhering to the above mentioned rule. One of the leading cases in that state is Capen v. Stoughton, above, the opinion in which was delivered by Chief Justice Bigelow in 1860. The following from that opinion has been frequently quoted by courts and text writers:

"We think this case differs essentially from those cited by the counsel for the respondents, in which it has been held, that the testimony of jurors is inadmissible in support of a motion to set aside a verdict on the ground of mistake. irregularity or misconduct of the jury, or of some one or more of the panel. It has been settled upon sound considerations of public policy that mistake of the testimony, misapprehension of the law, error in computation, irregular or illegal methods of arriving at damages, unsound reasons or improper motives, misconduct during the trial or in the jury-room, cannot be shown by the evidence of the jurors themselves, as the ground of disturbing a verdict, duly rendered. Chadbourn v. Franklin, 5 Gray, 315, and cases there cited. One of the strongest cases on this point in the English books is Bridgewood v. Wynn, 1 Har. & Wol., 574. In all those cases, however, it will be found upon examination, that an inquiry was attempted into the conduct of jurors during the progress of the trial, or while they were engaged in their deliberations upon the case, or in making up the verdict to which they finally agreed.

But in the present case the mistake which is proved by the testimony of the jurors is of a different character. It is not one connected with the consultations of the jury, or the mode in which the verdicts were arrived at or made up. No fact or circumstance is offered to be proved, which occurred prior to the determination of the case by the jury and their final agreement on the verdict which was to be rendered by them. But the evidence of the jurors is offered only to show a mistake, in the nature of a clerical error, which happened after the deliberations of the jury had ceased, and they had actually agreed on their verdict. The error consisted, not in making up their verdict on wrong principles or on a mistake of facts, but in an omission to state correctly in writing the verdict to which they had, by a due and regular course of proceeding, honestly and fairly arrived.''.

The rule was restated by that court as late as 1912 in the well considered case of Randall v. Peerless Co., above. The latest opinion we have found upon this subject was delivered by the Supreme Court of Minnesota in 1916. Paul v. Pye, above. That case, as well as a number of others above cited, is practically on all fours with the present case.

The only decisions which we have been able to find to the contrary are from the courts of California, South Dakota, Louisiana, Indiana, and Pennsylvania. Polhemus v. Heiman, 50 Cal., 438; Murphy v. Murphy, 1 S. D., 316, 9 L. R. A., 820; Chevallier v. Dyas, 28 La. Ann., 359; McKinley v. Bank, 118 Ind., 375; Smalley v. Morris, 157 Penn. St., 349, 27 Atl., 734.

The holdings in California and South Dakota are expressly rested upon statutory construction. The following is from the California case:

''In this State the affidavits of jurymen cannot be received to defeat or impeach a verdict. The prohibition extends beyond cases of willful misconduct on the part of jurors, and to every case in which the affidavits are attempted to be used as ground for setting aside a verdict because of a misunderstanding of its effect by some or all of the jurors who unite in its rendition. The only exceptions to this rule are those in which the Legislature has by express enactment authorized such attack upon the verdict by those rendering it.''

The following quotation from the South Dakota case clearly indicates that but for the statutes of that state the court would have reached a contrary conclusion:

''As to the first of these alleged errors, it has been settled upon sound considerations of public policy that the testimony of jurors is inadmissible in support of a motion to set aside a verdict on the ground of mistake, irregularity or misconduct of the jury, or of some one or more of the panel. This rule is conceded by counsel for appellant, but he insists that in the present case the mistake which is proved by the testimony of the jurors is of a different character

and nature from those from which the general rule emanated; that it is not one connected with the consultation of the jury or the mode at which the verdict was arrived at or made up. No fact or circumstance is offered to be proved which occurred prior to the determination of the case by the jury and their final agreement on the verdict which was to be rendered by them. But the evidence of the jurors is offered only to show a mistake, in the nature of a clerical error, which happened after the deliberations of the jury had ceased and they had actually agreed upon their verdict. The error consisted, not in making up their verdict on wrong principles, or on a mistake of the facts, but an omission to state correctly in writing the verdict to which they had honestly and fairly arrived; in other words, a case of a mere formal and clerical error, which, despite the general rule, the court ought to interfere to correct, in order to protect the rights of parties. This contention on the part of the appellant seems to be just and right, and highly salutary and reasonable, and we should be inclined to hold with him if it were not for the adjudications of a court of the highest standing and ability to the contrary, viz., the Supreme Court of California, the Statutes of which State upon new trials are identical with our own. While we do not wish to be understood that the decisions of that court are conclusive upon us in such case, yet when we are now asked to make an exception to a general and unreversed rule, it will be safest, to say the least, to make these exceptions as few as possible, that the rule may not be obliterated in time by the numerous exceptions that may be made to govern special cases. The statutory grounds upon which the affidavit of jurors is permitted to be heard are: 'Whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors.' Comp. Laws, subd. 2, sec. 5088.''

A careful reading of the cases above cited from Louisiana, Indiana, and Pennsylvania, will demonstrate the justness of the following criticism of them by the Supreme Court of Massachusetts in Randall v. Peerless Co., above.

''These cases seem to us to fail to take account of the distinction between the correction of a mistake proved by the unanimous statement of the panel, on one side, and the impeachment of a verdict by testimony respecting conduct and discussion in the jury room or the understanding and apprehension of evidence or law by the several jurors, on the other. The former is permissible. The latter is not.''

We hardly think necessary further discussion of the rule announced in the American and English courts to the effect that a unanimous mistake in the nature of a clerical error in announcing or transcribing a verdict already arrived at may be shown by affidavits or testimony of the jurors themselves; and when clearly estab-

lished may be relieved against. The reasons for the rule, the public policy involved, and the evils which might result from it are clearly presented in the cases cited. We would not feel justified in announcing a holding contrary to the almost unanimous opinion of the highest courts, both English and American, upon a question of this importance, even if we might entertain a doubt as to its soundness. We are convinced, however, that the rule is well grounded in principle; that it is unquestionably in the interest of justice; and that it contravenes no announced principle of public policy.

The issue, however, could not properly be determined upon demurrer. Defendants had the right to controvert the motion, and to have the jurors examined in open court. After a full hearing upon the motion the trial court was vested with discretionary power to deny it, unless the evidence were of such clear and convincing character as to admit of no other reasonable conclusion than that a unanimous mistake in the nature of a clerical error had been made. The motion clearly raised the issue of such mistake; hence the demurrer to it was improperly sustained, and the motion improperly denied.

We therefore conclude that the first certified question should be answered in the affirmative.

The courts of other jurisdictions are not agreed upon the measure of relief that may be granted upon a showing of unanimous mistake in announcing or transcribing a verdict already fairly arrived at. It is probably true, as stated in Wolfgram v. Schoepke, above, that the weight of authority supports the view:

"That upon a sufficiently clear showing of the mistake, and of what was the verdict agreed on and to be intended to be expressed, the court may substitute a true expression for the incorrect one, and enter judgment accordingly."

On the other hand, some jurisdictions hold in line with the following quotation from the Maine case of Weston v. Gilmore, above:

"Where an error has been committed by the jury, either by returning a verdict for the wrong party, or for a larger or smaller sum than they intended, and by the amendment proposed the verdict would be reversed or the damages increased or diminshed, and the substantial rights of the parties thus changed, when the verdict has been affirmed in open court and the jury have separated and become accessible to the parties, the only remedy for a mistake is by setting the verdict aside and granting a new trial."

We are convinced that the doctrine thus announced in the Maine case is sound in principle. It guards against any possible irreparable injury to the parties litigant, and satisfies every requirement of complete justice. The only consideration of public policy involved in denying a correction in a clear case of clerical mistake is the expense and delay incident to a new trial. We regard this considera-

tion of minor importance when contrasted with the innumerable evils which would inevitably follow in the wake of a rule of procedure which would beget the hope of obtaining a final adjudication of the rights of the parties upon a verdict established by the testimony of jurors after they had been discharged from their official duties, had separated, and had been afforded the opportunity freely to converse with the interested parties, their counsel, and their friends. We are clearly of the view that the safer and more salutary rule is to deny a correction in such cases; and to order a new trial as the full measure of relief against the mistake.

We conclude that the second certified question should be answered: Upon the showing made by the motion and attached exhibits, the verdict should not be corrected, but a new trial should be ordered.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

C. M. Cureton,

Chief Justice.